**Oreste KIDDER and Thelma Kidder,**
**Plaintiffs–Appellees,**

v.

**H & B MARINE, INC., et al.**
**Defendants–Appellants.**

**No. 90–3340.**

United States Court of Appeals,
Fifth Circuit.

April 12, 1991.

348

Fred W. Davis, Paul J. Hebert, Sonnier, Hebert, Cabes & Hebert, Abbeville, La., for Blue Cross & Blue Shield, et al.

Kevin D. Conner, Brian J. Waid, Bubrig & Waid, Buras, La., for H & B Marine, Inc.

Owen M. Goudelocke, William P. Rutledge, Lafayette, La., Domengeaux & Wright, for plaintiffs-appellees.

Before JOHNSON, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

The opinion and judgment entered in this cause on March 8, 1991, has been withdrawn, and the following opinion has been entered in its place.

Oreste and Thelma Kidder bring this action under the Comprehensive Omnibus Budget Reconciliation Act of 1985, Pub.L.

No. 99–272, .100 Stat. 222 (1986) ["CO-BRA"] (codified at 29 U.S.C.A. §§ 1161–68 (West 1990 Supp.)).[1] The Kidders allege that, following Mr. Kidder's termination, the defendants—the company that had employed Mr. Kidder and that company's insurer—failed to notify the Kidders of, and failed to provide them with, the continuation-insurance coverage required by CO-BRA. The district court held in favor of the plaintiffs, finding that a qualified employee-welfare-benefit plan existed, that the small-employer exemption from CO-BRA did not apply, and that the defendants violated COBRA's requirements to provide continuation coverage and to notify the plaintiffs of their continuation rights. The court, however, denied the Kidders' request for attorney fees on the ground that the Kidders failed to show bad faith on the part of any of the defendants. We affirm all elements of the district court's judgment except one. We reverse the portion of the district court's judgment holding Blue Cross liable for 25% of the Kidders' damages, and hold instead that H & B Construction is responsible for the entire damage award.

## I.

In 1983 Oreste Kidder began working for H & B Marine, Inc., ["H & B Marine"] as a dredge captain on one of the company's barges. For a number of years—at least since 1983—H & B Marine operated in close cooperation with another company, H & B Construction of Louisiana, ["H & B Construction"] which was owned by the same four individuals who owned H & B Marine. The degree of cooperation and overlap between the two companies was extensive. Although the companies had separate post-office boxes and telephone numbers, they operated out of the same office and shared an officer manager. The two companies complemented each other: H & B Marine worked on waterways, doing such things as dredging channels; whereas H & B Construction worked on land, doing such things as building levies. The companies were so close, in fact, that they had a practice of exchanging employees as workloads varied. On June 30, 1986, the two companies merged, leaving a single corporation with the name H & B Construction.

After the merger Mr. Kidder continued to work for H & B Construction until the company terminated him in February of 1987. By the time of Kidder's termination, H & B Construction had purchased a group health-insurance policy to cover its employees. The underwriter of the policy was Blue Cross and Blue Shield of Louisiana. It is undisputed that, when Blue Cross began underwriting the policy for H & B Construction on September 1, 1986, it had no knowledge of the company's previous practice of exchanging employees with H & B Marine or of the merger and did not know that COBRA might apply.[2] The reason for Blue Cross's ignorance was that, on its "Participating Employer Application" with Blue Cross and Blue Shield of Louisiana Multiple Employer Trust, H & B Construction mentioned nothing about a merger and listed only 19 employees, 18 of whom were to be enrolled in the insurance program.[3] In addition, all of the 1986 pre-

---

1. COBRA amended the Employee Retirement Income Security Act of 1974, Pub.L. 93–406, Title I, § 2, 88 Stat. 832 (1985) ["ERISA"] (codified at 29 U.S.C.A. §§ 1001 *et seq* (West 1985)). ERISA was designed to protect private-sector employees from losing pension rights after many years of service. ERISA failed to cover workers' health-insurance benefits, however. As a result, Congress enacted COBRA to fill the gap by requiring employers who participate in group health plans to continue to provide health coverage to employees who leave work under certain statutorily prescribed circumstances. An employer who fails to comply with COBRA loses the tax deduction for expenses incurred in providing the group health plan.

2. On September 2, 1986, H & B Construction signed a "Participating Employer Application" with Blue Cross and Blue Shield of Louisiana Multiple Employer Group Insurance Trust. The application became effective retroactively on September 1, 1986, when a Multiple Employer Group Insurance Trust agreement was executed making H & B Construction a Participating Employer in the trust. The previous underwriter had been Pan–American Life and Piedmont Life.

3. As Kidder points out, however, the application included no questions concerning whether H & B had been involved in any mergers or employee-exchange programs with other companies.

mium statements received from H & B listed fewer than 20 employees. However, Blue Cross eventually received a premium statement from H & B, dated January 1, 1987, that listed more than 20 employees.

H & B Construction terminated Kidder in February of 1987, and Blue Cross removed him from the insurance program as of March 1, 1987. To indicate to Blue Cross that Kidder had been terminated, the office manager of H & B Construction struck through and wrote "cancel 3/1/87" beside Kidder's name on the monthly premium statement. After Kidder was terminated, several H & B Construction representatives told him that he was not eligible for continuation of the group coverage but that he was eligible for conversion coverage—that is, the right to purchase an alternative individual insurance policy that would provide him with some coverage, but less coverage than had been provided under the group plan. Then, someone at H & B Construction prepared Kidder's application for conversion coverage and sent it to Blue Cross, presumably on Kidder's instruction. Blue Cross subsequently issued the conversion policy to Kidder. In March 1987 Mrs. Kidder incurred substantial medical expenses, some of which were covered under the Blue Cross conversion policy.

The Kidders sued H & B Marine, H & B Construction, Blue Cross and Blue Shield of Louisiana, Louisiana Health Service and Indemnity Company, and Blue Cross and Blue Shield of Louisiana Multiple Employer Group Insurance Trust, seeking recovery under COBRA.[4] The Kidders sought $23,890.24, which represents the difference between the amount received under the individual conversion policy and the amount that would have been received under the group plan. At trial the issues were whether COBRA applies to H & B Construction's health plan and, if so, whether H & B Construction or Blue Cross (or both) violated the duties imposed by COBRA to provide continuation of group coverage and to notify the Kidders of their right to that continuation coverage.

The district court concluded that H & B Construction's group health-insurance was subject to COBRA for two reasons. First, the court held that H & B Construction's insurance program was an "employee welfare benefit plan" as that term is defined in the relevant statutes and regulations. Second, the court held that H & B Construction's insurance plan did not fall within COBRA's small-employer exemption, 29 U.S.C.A. § 1161(b), which exempts companies that have fewer than twenty employees on a typical day during the preceding calendar year. The court concluded that this exemption did not apply because, for the purposes of the exemption, entities under common control are considered a single employer. And since H & B Construction and H & B Marine had been under common control throughout 1986, they were considered a single employer whose total number of employees exceeded twenty on a typical day.[5] Having found COBRA applicable, the court went on to hold that all the defendants had notification duties under COBRA and that all defendants were liable since none had properly notified the Kidders. Then, based on the comparative degrees of fault among the defendants, the court held H & B Construction liable for

---

**4.** Several insurance agents were also named, but were later dismissed from the suit. It remains unclear why H & B Marine was named as a defendant, since that company apparently ceased to exist at the time of the merger. H & B Construction and Blue Cross filed cross-claims against each other. Blue Cross Trust and LHSIC are also named as defendants in Blue Cross's cross-claim and have joined Blue Cross in its cross-claim against H & B Construction. Because the defendants other than H & B Construction and H & B Marine are treated as one, both by the district court and in the briefs, we will do the same and will refer to them collectively as Blue Cross.

**5.** The court found that "[w]hile there is some dispute over whether H & B Construction employed on average 20 or more employees on a typical day in 1986, there is no dispute that H & B Marine and H & B Construction combined employed on average more than 20 employees on a typical business day in 1986." In their briefs on appeal, the defendants-appellants do not contest this finding; rather they contest that, for the purposes of determining the applicability of the small-employer exemption, H & B Construction's and H & B Marine's employees should be grouped together.

75% and held Blue Cross liable for 25% of the damage award.

The issues on appeal are (i) whether H & B Construction's insurance scheme qualifies as a "group health plan" under ERISA; (ii) assuming the answer to (i) is *yes*, whether COBRA's small-employer exemption applies; and (iii) assuming the answer to (ii) is *no* and thus that COBRA applies, whether the district court correctly found both H & B Construction and Blue Cross liable under COBRA.

## II.

The general statement in COBRA requiring employers sponsoring group health plans to provide continuation insurance coverage reads as follows:

> The plan sponsor of each group health plan shall provide ... that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect ... continuation coverage under the plan.

29 U.S.C.A. § 1161(a) (West Supp.1990). Thus COBRA applies to "group health plan[s]." A group health plan is defined as "an *employee welfare benefit plan* providing medical care ... to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C.A. § 1167(1) (West Supp.1990) (emphasis added). ERISA in turn defines an employee welfare benefit plan as

> any plan, fund or program ... established or maintained by an employer ... to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C.A. § 1002(1) (West 1985).

The district court held that "since HB Construction, as a participating employer, paid a percentage of the premiums, the plan constitutes an 'employee welfare benefit plan' under ERISA, and thus, a 'group health plan' under COBRA." *Kidder v. H & B Marine, Inc.*, 734 F.Supp. 724, 729 (E.D.La.1990). The court based its decision on its interpretation of the Department of Labor's regulations further defining employee welfare benefit plan. These regulations refine the definition by setting out four conditions the joint presence of which is sufficient to *disqualify* a plan from being an employee welfare benefit plan. Hence an employee welfare benefit plan does *not* include a group-insurance program offered by an insurer to employees under which

> (1) No contributions are made by an employer or employee organization;

> (2) Participation [in] the program is completely voluntary for employees or members;

> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; *and*

> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j), p. 335 (emphasis added), *cited in Kidder v. H & B Marine, Inc.*, 734 F.Supp. 724, 728 (E.D.La.1990). Thus, given the language of the regulation, especially the use of the conjunction "and," the presence of all four conditions is jointly sufficient to cause the program to be excluded from the definition of a "group plan" and thus to be excluded from COBRA.

In its decision to include H & B Construction's plan within ERISA and hence COBRA, the district court relied heavily on the first criterion listed by the Labor Department, the one pertaining to the payment of employees' premiums. Indeed, as defendants argue, the court appears to

have relied solely on that single clause to determine that H & B Construction's insurance constitutes an ERISA plan: *"Therefore,* since HB Construction, as a participating employer, paid a percentage of the premiums, the plan constitutes an 'employee welfare benefit plan' under ERISA, and thus, a 'group health plan' under COBRA." *Id.* at 729 (emphasis added). On a literal reading of the court's opinion, the court appears to have construed the regulation to say that if *any one* of the four listed factors does *not* appear,[6] then the insurance program is *included* within the definition of an employee welfare benefit plan and thus is subject to COBRA. In other words, under this interpretation all four conditions, including condition number one (the absence of contributions by the employer), are necessary as well as sufficient conditions for an insurance program to be excluded from the definition of an employee welfare benefit plan. This reading of the regulation, we admit, is not compelled by the language of the regulation itself. That is, the language, compels only the reading that the four conditions are jointly sufficient for exclusion; it does not compel the reading that the conditions are also individually necessary for exclusion. On the other hand, neither is this reading of the regulation necessarily precluded by the language of the regulation either. However, as discussed below, Fifth Circuit precedent precludes any interpretation of the regulation that leads to the conclusion that the employer's contribution of premiums alone is sufficient to create a group health plan.

In *Taggart Corp. v. Life and Health Benefits Admin., Inc.,* 617 F.2d 1208, 1211 (5th Cir.), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1980), we held that an employer's "bare purchase" of an insurance policy does not establish an ERISA plan. *See also Brady v. Empire Blue Cross/Blue Shield,* 732 F.Supp. 678 (W.D.La.1990); *Clark v. Golden Rule Ins. Co.,* 737 F.Supp. 376, 381–83 (W.D.La. 1989). Defendants rely on the *Taggart*

principle to argue that the district court erred in finding an ERISA plan. They contend further that H & B Construction's insurance program was not an ERISA plan because, although H & B Construction contributed a portion of the employees' premiums, it did not actively "maintain" or administer the program; and some degree of active involvement in the plan's funding and administration is necessary to establish an ERISA plan. *Baucom v. Pilot Life Ins. Co.,* 674 F.Supp. 1175, 1181 (M.D.N.C. 1987); *Bell v. Employee Sec. Ben. Ass'n.,* 437 F.Supp. 382, 396 (D.Kan.1977). Thus the defendants conclude that, in the absence of evidence indicating H & B Construction's active involvement in the maintenance or administration of the plan, the district court should have found that no plan existed.

This argument has force and, had there been no other relevant precedents, might have persuaded us to reverse the district court's judgment or at least to remand the case for redetermination. However, after the district court's decision was rendered, we decided a case that affects our analysis of this issue. In *Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990), we addressed the question whether the employer in that case, Noffs, had established and maintained a qualifying ERISA insurance plan:

> Noffs established and maintained the plan by purchasing the policy and paying the premiums directly to Northbrook. Noffs' employees contributed, through payroll deductions, one-half of the monthly premium payments made to Northbrook; Noffs paid the other half. While the bare purchase of an insurance policy may not exclusively establish the existence of an ERISA plan, *see [Taggart,* 617 F.2d at 1211 and *Donovan v. Dillingham,* 688 F.2d 1367, 1373, 1375 (11th Cir.1982) (en banc)] the evidence here clearly shows Noffs' intent to provide its employees with a welfare benefit

---

**6.** That is, the reverse of one of the factors occurs. For example, as here, it is *not* the case that "[n]o contributions [were] made by an employer"; in fact H & B Construction *did* make contributions by paying a portion of the premiums.

program through the purchase and maintenance of a group insurance policy.

. . . .

Although we held in *Taggart* that the purchase of an insurance policy does not, in and of itself, establish the existence of an ERISA plan, we certainly did not hold ... that an employer's purchase of health insurance offers no evidence of an intent to provide such a plan. We agree with the reasoning of the Eleventh Circuit that

the purchase of insurance does not conclusively establish a plan, fund, or program, but *the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.*

*Donovan*, 688 F.2d at 1373.

*Id.* at 241, 242 (footnote omitted; emphasis added). We distinguished *Taggart* factually on the ground that it involved a corporation with only one employee who sought to establish that the multiple employer trust to which he belonged was an ERISA plan, but who was essentially purchasing insurance for himself and his family. We went on to detail the facts in *Memorial Hospital* that distinguished it from *Taggart:*

Unlike *Taggart*, the present case does not involve the bare purchase of insurance by a lone employee through a MET. Noffs, a statutory employer, has chosen to provide welfare benefits to all of its full-time employees through the purchase of a group insurance policy. Noffs is solely responsible under the policy for submitting monthly premiums directly to Northbrook by the premium due dates. The fact that Noffs' administrative functions under the policy are minimal is perfectly in keeping with its intent that Northbrook administer the plan as well as insure it. There is, thus, an employer-employee-plan relationship that was lacking in *Taggart.*

*Id.* at 242–43 (footnote and citation omitted).

Based on essentially the same reasoning as was advanced in *Memorial Hospital,* we conclude that H & B Construction's payment of premiums on behalf of its employees is "substantial evidence that a plan, fund, or program [was] established." Moreover, as in *Memorial Hospital* and unlike in *Taggart*, this case does not involve a company composed of a single employee who is essentially purchasing insurance for himself while attempting to characterize his insurance as a group health plan. Therefore, although we do not adopt the district court's apparent reasoning that the payment of premiums alone is sufficient to create a plan, we affirm its conclusion that an ERISA plan did exist.

### III.

Having found the existence of an ERISA plan, we now turn to the question whether the plan falls within the small-employer exemption to COBRA. The small-employer exemption states that COBRA "shall not apply to any group health plan for any calender year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." 29 U.S.C.A. § 1161(b) (West Supp.1990). Defendants argue that this exemption should apply here because H & B Construction employed fewer than twenty employees on a typical day in 1986, the calendar year preceding Kidder's termination.[7] To make this argument work, however, defendants contend that the number of H & B Construction employees must be calculated without including the employees who worked for H & B Marine during the period in 1986—January 1 through June 30—when the two corporations existed separately. It is undisputed that calculating the number of H & B Construction employees for 1986 without including the pre-

---

**7.** The only guidance we find as to the appropriate method for determining whether a company "normally employed fewer than 20 employees on a typical business day" is a proposed I.R.S. regulation: "An employer is considered as having normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its working days that year." 52 Fed.Reg. 22715–22732, at 22721, *cited in Martinez v. Dodge Printing Centers, Inc.,* 123 B.R. 77 (D.Colo.1991).

merger H & B Marine employees would result in a finding that H & B Construction employed fewer than twenty on a typical day for that year. It is also undisputed that making the same calculation *including* those who worked at H & B Marine would yield more than twenty employees for H & B Construction in 1986. Therefore, the only question is whether we should include in our calculation the pre-merger H & B Marine employees. Based on its reading of the small-employer exemption from COBRA, the district court decided to include the pre-merger H & B Marine employees, treating H & B Construction and H & B Marine as a single employer. The court explained its decision as follows:

> For the purposes of this exemption, each employer and other entities under common control are considered as a single employer. 26 U.S.C. 52(a)-(b); 52 Fed. Reg. at 22721. Since HB Construction and HB Marine were under common control, not to mention were virtually two halves to the same outfit, their combined average employees is the correct figure for purposes of the small employer exemption. That combined number of average employees during the applicable year, 1986, is clearly over 20.

734 F.Supp. 724, 729 (footnote omitted).

The defendants argue that, in so ruling, the district court erroneously relied on a common-control provision that was deleted by amendments made in December of 1989. Before the amendments, the small-employer exemption, 29 U.S.C.A. § 1161(b), read as follows:

> Subsection (a) [which requires the "plan sponsor" to provide continuation coverage to specified employees upon the occurrence of certain "qualifying events"] shall not apply to any group health plan for any calender year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year. Under [the] regulations, rules similar to the rules of subsections (a) and (b) of section 52 of the Internal Revenue Code of 1954 [26 USCS § 52(a), (b)] (relating to employers under common control) shall apply for purposes of this subsection.

As it turns out, however, the second sentence of the exemption, the one concerning common control, was deleted by section 7862(c)(1)(B) of the Omnibus Budget Reconciliation Act of 1989. Congress made this deletion applicable to "years beginning after December 31, 1986." The defendants argue that, because Kidder was terminated and sought recovery in 1987, this case falls under the amended version of the small-employer exception.[8] Therefore, the argument goes, since Congress deleted the reference to the common-control provisions in 26 U.S.C.A. § 52, it must have intended that separate corporations be treated separately no matter how closely those corporations are connected.

We find no specific mention in the legislative history of the 1989 Act indicating why the deletion to section 1161(b) was made, nor do we find any cases discussing the question. In any event, although Congress in 29 U.S.C.A. § 1161(b) deleted the reference to the common-control provisions from 26 U.S.C.A. § 52, it retained COBRA's general definition of the term "employer" from 29 U.S.C.A. § 1167(4) (West Supp.1991). In defining "employer," Section 1167(4) makes applicable the common-control provision of 26 U.S.C.A. § 414(t) (West Supp.1991). Section 414(t) refers to section 414(b), which provides that "all employees of all corporations which are members of a controlled group of corporations (within the meaning of section 1563(a), ...) shall be treated as employed by a single employer." Section 1563(a)(2) sets out the following definition of a "controlled group

---

**8.** At oral argument the Kidders' lawyer contended that the effective-date of the amendment deleting the common-control provision applies to *plans that begin* "after December 31, 1986," rather than to *qualifying events that occur* "after December 31, 1986," as the defendants would have us interpret the amendment. Therefore, the argument goes, since the plan in this case began before that date—it began on September 1, 1986—the old version of section 1161(b) and not the amended version applies. Because we hold that common-control principles apply notwithstanding the amendment, we do not address question of the effective-date.

of corporations," which appears to be applicable to this case:

> **Brother-sister controlled group.—** Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing—
>
> (A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and
>
> (B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

26 U.S.C.A. § 1563(a)(2) (West Supp.1991).

Since both H & B Marine and H & B Construction were corporations owned entirely by the same four individuals, each owned 25% of each company, those corporations must be treated as one for the purposes of COBRA, and the district court was correct to do so. Having said this, we further conclude that the district court correctly found that during 1986 H & B Construction—taken together with H & B Marine—employed more than twenty employees on a typical work day and therefore that the small-employer exemption does not apply. Hence we agree that COBRA applies.

### IV.

Given the existence of an ERISA plan that is subject to the provisions of COBRA, we now turn to the actual application of COBRA to the facts of this case. First off, as noted by the district court, no one disputes that Kidder's termiantion was a "qualifying event" under COBRA, 29 U.S.C.A. § 1163(2), or that Mrs. Kidder was a "qualified beneficiary," 29 U.S.C.A. § 1167(3)(A)(i). As to the issue of liability under the Act, the district court made its findings in several distinct steps. First,

the court determined that H & B Construction was the "plan sponsor," as that term is defined at 29 U.S.C.A. § 1002(16)(B)(i) ("the employer [is the plan sponsor] in the case of an employee benefit plan established or maintained by a single employer"), and that therefore H & B Construction was responsible for providing the continuation coverage pursuant to section 1161(a). Since H & B Construction failed to provide the continuation coverage, it should bear most of the damages, the court concluded.

■ In addition to the duty to provide continuation coverage was the duty to notify Kidder of the availability of that coverage. The court concluded that both H & B Construction and Blue Cross had notification duties and that both failed, in varying degrees, to fulfill their obligations. The notice requirements of section 1166(a) are, in pertinent part, as follows:

> (1) the *group health plan* shall provide, at the time of commencement of coverage under the plan, written notice to each covered employee and spouse of the employee (if any) of the rights provided under this subsection,
>
> (2) the *employer* of an employee under a plan must notify the administrator of a qualifying event described in [in section 1163] ... within 30 days ... of the date of the qualifying event,
>
> ....
>
> (4) the *administrator* shall notify ...
>
> [, upon the occurrence of any qualifying event under section 1963, any qualified beneficiary with respect to that event]
>
> of such beneficiary's rights under this subsection.

29 U.S.C.A. § 1166(a) (footnotes omitted; emphasis added).

As a result of section 1166(a)(2), H & B Construction, as the employer in this case, obviously had a responsibility to notify the plan administrator of the occurrence of a qualifying event. Thus H & B Construction bore some notification burden in addition to its responsibility to provide the continuation coverage.

The court also held that, as part of "the group health plan," Blue Cross had a duty to inform Kidder of his right to continued coverage. Section 1166(a)(1) places on the group health plan the responsibility at the commencement of coverage to provide written notice to the employee of his continuation rights. COBRA does not specify who or what "the group health plan" is and thus does not reveal on whom section 1166(a)(1) places this initial notification burden. As the district court pointed out, the law is silent on this question. The district court, therefore, interpreted section 1166(a)(1) to impose a duty of notification on all the individual parties to the group plan. This is a sensible, intuitive reading of the statute's language and structure; and, in the absence of law to the contrary, we adopt that interpretation here.

The district court went on to find that, as a result of H & B Construction's failure to notify Blue Cross of the merger with H & B Marine, Blue Cross could not be held responsible for its erroneous belief that the small-employer exemption applied and that, thus, COBRA did not apply. The court also found, however, that Blue Cross's notification duty kicked in when Blue Cross received a premium statement—dated January 1, 1987—revealing that H & B Construction at that point had more than twenty employees enrolled in the plan. Blue Cross then should have realized that the small-employer exemption might not apply and therefore COBRA might apply. At that point, a duty of notification had arisen. Having reached these conclusions concerning H & B Construction's and Blue Cross's failure to meet their respective duties, the court apportioned liability according to its judgment as to the degree of the parties' respective duties and the degree of their fault: The court found H & B Construction

liable for 75% of the requested damages and found Blue Cross liable for 25%.[9]

■■■ We agree with much of the district court's reasoning. First, as noted above, we agree that upon the commencement of a plan, COBRA imposes a duty on the insurer, as a party to the group health plan, to notify beneficiaries of their rights under the plan. *See* 29 U.S.C.A. § 1166(a)(1). We also agree with a proposition implicit in the district court's opinion: in addition to the duty of notification imposed at the commencement of the plan, COBRA imposes on some parties a continuing duty to keep beneficiaries informed of their rights under the plan and to inform them whenever information comes to light indicating that their COBRA rights have been materially affected. *See* 29 U.S.C.A. § 1166(a)(4).

■■■ We must disagree with the district court, however, that either of these duties ever attached to Blue Cross in this case. Blue Cross was never adequately notified either (1) that a COBRA plan had "commenced"—that is, that 20 or more employees were now enrolled, so that the small-employer exemption did not apply— or (2) that a "qualifying event" had occurred. A *single* premium statement listing more than twenty enrolled employees and dated January *1987*[10] was not sufficient to trigger for Blue Cross either the one-time duty of notification that arises upon commencement of the plan or the continuing duty of a plan administrator.

Further, even if Blue Cross had known that the H & B plan had become subject to COBRA, Blue Cross still would not have had a duty to notify Kidder of his continuation rights. While a plan administrator such as Blue Cross generally does have such a duty, *see* § 1166(a)(4), that duty

---

**9.** H & B Construction argues that Blue Cross should be held liable for the entire amount of the damages. The argument is that, since Kidder's premiums under the conversion policy were (coincidentally) the same as they would have been under the group policy, we should simply treat Kidder as if he had purchased continuation coverage. On this theory, Blue Cross would be liable merely for the differential in coverage—which is (not coincidentally) the

amount of the damages sought, $23,890.24. This argument fails because it imposes no liability on H & B Construction, whom we conclude below is entirely responsible for the Kidders' damages.

**10.** The relevant period for determining the applicability of the small-employer exemption is 1986. *See* Part III above.

does not come into play unless the administrator is properly notified of the occurrence of a qualifying event by the employer. *See* 29 U.S.C.A. § 1166(a)(3). The district court correctly found that the word "cancel" written beside Kidder's name on a premium statement was insufficient to alert Blue Cross that a qualifying event had occurred. As a result, Blue Cross's duty as plan administrator to notify Kidder of his continuation rights never arose.

In sum, we hold that on the facts of this case it was error to hold Blue Cross responsible for any portion of Kidder's damages. Accordingly, we reverse that portion of the district court's judgment holding Blue Cross liable for 25% of Kidder's damages; instead, we hold that H & B Construction is liable for the entire damage award. On all other issues, we uphold the district court's judgment, including the finding that the Kidders are not entitled to attorney fees, as they have made no showing that the defendants acted in bad faith.

For the reasons stated, the district court's judgment is AFFIRMED in part and REVERSED in part.