UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-2256

CONN FEAMSTER; SANDRA FEAMSTER; JOHN DOES 1-25,

Plaintiffs - Appellants,

v.

MOUNTAIN STATE BLUE CROSS & BLUE SHIELD, INCORPORATED; RELATIONAL MANAGEMENT SERVICES, LLC; HIGHMARK WEST VIRGINIA INCORPORATED, doing business as Mountain State Blue Cross & Blue Shield; SOLACIUM HOLDINGS, LLC; L. JAY MITCHELL; BART MITCHELL; CHERYL MITCHELL; SHARON FINDLAY,

Defendants - Appellees.

Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Joseph R. Goodwin, Chief District Judge. (6:10-cv-00241)

Argued: October 24, 2012      Decided: December 28, 2012

Amended Opinion Filed: January 29, 2013

Before DAVIS and FLOYD, Circuit Judges, and Catherine C. EAGLES, United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge Davis wrote the opinion, in which Judge Floyd and Judge Eagles joined.

**ARGUED:** Roy Franklin Harmon, III, HARMON & MAJOR, PA, Greenville, South Carolina, for Appellants. Sara Ellen Hauptfuehrer, STEPTOE & JOHNSON, LLP, Bridgeport, West Virginia, for Appellees. **ON BRIEF:** Jeffrey V. Mehalic, LAW OFFICES OF JEFFREY V. MEHALIC, Charleston, West Virginia, for Appellants. Jan L. Fox, STEPTOE & JOHNSON PLLC, Charleston, West Virginia, for Appellees Relational Management Services, LLC, L. Jay Mitchell, Bart Mitchell, Cheryl Mitchell, and Sharon Findlay; Erin E. Magee, Richard G. Ford, Jr., JACKSON KELLY PLLC, Charleston, West Virginia, for Appellee Solacium Holdings, LLC; Jill E. Hall, BOWLES RICE MCDAVID GRAFF & LOVE LLP, Charleston, West Virginia, Robert J. Kent, BOWLES RICE MCDAVID GRAFF & LOVE LLP, Parkersburg, West Virginia, for Appellee Highmark West Virginia Incorporated.

---

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Circuit Judge:

This dispute arises from the failure of Relational Management Services, LLC ("RMS") to provide continuation health care coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") to one of its former employees, Sandra Feamster, and her husband, Conn Feamster ("the Feamsters"). Appellees include RMS, Mountain State Blue Cross & Blue Shield, and several other individuals and entities affiliated with RMS and its health-plan provider (collectively, "Appellees"). The Feamsters were denied COBRA coverage because Appellees claimed that RMS was a "small employer" of fewer than 20 employees, and was thus not obligated to provide it. The key issue on appeal is whether RMS and Solacium Holdings, LLC ("Solacium") should have been considered a single employer in 2007; if so, the employer had 20 or more employees, obligating it to provide COBRA coverage. For the reasons that follow, we hold that even if RMS and Solacium were a single employer for a portion of 2007, they were not a single employer on a "typical business day" during that year, as prescribed by 29 U.S.C. § 1161(b). Accordingly, we affirm the district court's grant of summary judgment to Appellees.

I.

A.

We begin by providing some background on the complicated network of business entities involved in this case. RMS was formed in 2005 to operate a therapeutic boarding school for teenagers in West Virginia. RMS's sole member was the Teri Ann Mitchell Family Irrevocable Trust ("the Family Trust"). Teri Ann Mitchell is married to L. Jay Mitchell, RMS's founder. The Family Trust also held a controlling membership interest in TAS Development, LLC, which organized TAS Greenbrier Properties, LLC. TAS Greenbrier Properties, LLC, entered into a lease and option to purchase property for the school. The school's founders also established the Greenbrier Academy Trust ("the Greenbrier Trust"). RMS and the Greenbrier Trust contracted for RMS to provide management services to the school. Tuition was paid to the Greenbrier Trust, and the Greenbrier Trust paid over the funds to RMS as management fees. Of the above entities, only RMS and TAS Greenbrier Properties, LLC, ever had any employees.

The school -- called the Greenbrier Academy for Girls ("the Academy") -- opened in September 2007. Appellees L. Jay Mitchell, Bart Mitchell, Cheryl Mitchell, and Sharon Findlay were involved in its operation. Appellee Highmark West Virginia, Inc., provided RMS with its group health plan.

4

Solacium is a holding company for entities that operate schools for troubled youth. In 2006, Solacium, through an affiliate entity, bought the assets of Alldredge Academy, a school co-founded by L. Jay Mitchell in 1999. Also in 1999, Solacium New Haven, LLC, hired L. Jay Mitchell as Chief Program Officer. L. Jay Mitchell also acquired an ownership interest in Solacium at that time.

An August 2007 magazine article based on an interview with L. Jay Mitchell and others noted that Solacium would be opening a new school in West Virginia. In his deposition, however, L. Jay Mitchell disputed that characterization and speculated that it was likely based on the view that "Solacium hoped to be able to buy" the Academy in the future. J.A. 366.[1]

On September 1, 2007, Solacium and RMS entered into an agreement ("the 2007 Agreement") whereby Solacium agreed to provide administrative services (including payroll, benefit administration, personnel, accounting, and marketing) to RMS. The 2007 Agreement also gave Solacium an option to purchase RMS's assets. Specifically, under the 2007 Agreement, Solacium could exercise the option during the one-year period beginning approximately on September 1, 2011, four years after the

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

execution of the 2007 Agreement. The 2007 Agreement was short-lived, however, as the parties terminated it (as well as L. Jay Mitchell's employment agreement with Solacium) a mere four months later, on January 1, 2008. Thereafter, Solacium had no involvement in the operation or management of the Academy. In 2009, RMS was authorized to use the trade name Greenbrier Academy for Girls, and the Greenbrier Trust was dissolved.

Meanwhile, RMS hired Ms. Feamster in September 2007. She, along with her husband, received health insurance through RMS's group plan. Ms. Feamster took a medical leave of absence in March 2008, and her health insurance coverage ended on June 1, 2008. Ms. Feamster then sought COBRA coverage, but RMS told her that it did not provide such coverage; her insurance provider explained that this was because RMS had fewer than 20 employees. As a result, the Feamsters incurred hundreds of thousands of dollars in medical expenses, a portion of which would have been covered by health insurance if Ms. Feamster had received COBRA coverage.

### B.

The Feamsters filed a complaint in the United States District Court for the Southern District of West Virginia in March 2010. Following discovery in the federal case and in a

related state case,[2] they filed their third amended complaint on February 11, 2011. It contained four counts: (1) that RMS, Bart Mitchell, Cheryl Mitchell, and Sharon Findlay misrepresented that the group health plan was subject to the small-employer exemption and unlawfully failed to provide the Feamsters with COBRA coverage, thus entitling the Feamsters to reimbursement of medical expenses; (2) that RMS, Bart Mitchell, Cheryl Mitchell, and Sharon Findlay failed to provide notice of COBRA coverage to the Feamsters, and the administrator is liable to plan participants in the amount of $110 per day and reimbursement of medical expenses; (3) that one or more of the Appellees breached their fiduciary duties and are personally liable to the plan for the misuse of plan assets; and (4) that Appellees breached their fiduciary duties, and the Feamsters are entitled to appropriate equitable relief.

A number of motions to dismiss and motions for summary judgment followed. Before ruling on the motions to dismiss, the district court granted Appellees' cross-motion for summary judgment for two alternative reasons. First, it determined that RMS was a "small employer" in the 2007 calendar year, and thus

---

[2] In March 2009 the Feamsters had filed suit in West Virginia state court under various state law theories, also with the goal of recovering medical expenses. Those claims were dismissed on summary judgment on April 21, 2011.

was not obligated to provide COBRA coverage. J.A. 920-25. Second, it determined that "even if the court had found that RMS was an affiliated service group with Solacium, that group would have had more than twenty employees for only four months of the 2007 calendar year," which it deemed insufficient to move it out of the "small employer" category such that it would have been obligated to provide COBRA coverage. J.A. 925-26. The Feamsters timely appealed.

II.

The central question on appeal is whether, by virtue of Solacium's option to purchase RMS's assets, RMS and Solacium should have been considered a single employer for purposes of COBRA continuation health coverage in 2007. The parties agree that RMS had fewer than 20 employees during that time, but that combined with Solacium, there were more than 20.[3] As a result, if the two organizations are considered a single employer, the

_____

[3] Appellees conceded in the district court that the following entities should be considered the same employer under 26 U.S.C. § 414(c): the Family Trust; the Greenbrier Trust; RMS; TAS Development, LLC; TAS Greenbrier Properties, LLC; L. Jay, Inc.; and L. Jay Mitchell Group. Defs.' Mem. in Opp'n to Pls.' Mot. for Summ. J. and in Supp. of Cross-Mot. for Summ. J. 14 (Dist. Doc. No. 340). Most of these entities had no employees, however, and in any case, their combined employees did not add up to 20 during the relevant time period.

8

employer would have 20 or more employees, obligating it to provide COBRA coverage to Ms. Feamster. But if they are considered separate employers, RMS permissibly denied Ms. Feamster that coverage, and the district court properly granted summary judgment to Appellees.

"Whether a party is entitled to summary judgment is a question of law we review de novo using the same standard applied by the district court." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Through COBRA, "Congress required ERISA plan sponsors to provide terminated employees and[/]or their dependents with the option of purchasing continuation health coverage without regard to insurability." Johnson v. Reserve Life Ins. Co., 765 F. Supp. 1478, 1479 (C.D. Cal. 1991). See 29 U.S.C. § 1161(a) ("The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan."). However, COBRA rules do not apply to employers with "fewer than 20 employees on a

typical business day during the preceding calendar year." 29 U.S.C. § 1161(b).

Because Ms. Feamster took medical leave from RMS in March 2008, we must determine whether during the preceding calendar year -- 2007 -- her employer had 20 or more employees on a typical business day. This inquiry gives rise to the two questions on appeal: (1) whether RMS and Solacium should be considered a single employer by virtue of the 2007 Agreement's provision granting Solacium an option to purchase all of RMS's assets; and (2) if so, whether RMS and Solacium were a single employer on a typical business day during 2007. Assuming without deciding that the option gave Solacium constructive ownership of RMS, we conclude that such ownership existed for fewer than half of the employer's typical business days in 2007, and, thus, that Appellees were not obligated to provide COBRA coverage to the Feamsters.

III.

The district court held that even if the option conferred constructive ownership of the Academy on Solacium, that constructive ownership did not exist for a long enough time to require the employer to offer COBRA continuation coverage. The court reasoned that because the 2007 Agreement was in effect for only four months (from when it was executed on September 1,

10

2007, until it was terminated on January 1, 2008), RMS and Solacium were not a single employer on a typical business day in 2007. Consequently, the court concluded, the employer had fewer than 20 employees during the relevant time period, and was thus not obligated to provide COBRA continuation coverage.

Under the applicable Treasury Regulation, "[a]n employer is considered to have normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its typical business days during that year." 26 C.F.R. § 54.4980B-2, Q&A-5(b).[4] The Feamsters argue that "[b]ecause the Greenbrier facility only opened on September 1, 2007, the court should have taken into account [only the] days following that date as 'typical business days.'" Feamster Br. 32.

---

[4] The district court mistakenly relied on a proposed version of this regulation, under which the inquiry is described as follows: "An employer is considered as having normally employed fewer that 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its working days during that year." Prop. Treas. Reg. § 1.162-26, 52 Fed. Reg. 22716-01, Q&A 9(b) (June 15, 1987) (emphasis added). The final regulation quoted above uses the language "typical business days" rather than "working days," see 26 C.F.R. § 54.4980B-2, Q&A-5(b), rendering the district court's reliance on the proposed regulation problematic; if, for some reason, the calculation of working days is not coextensive with the calculation of typical business days, the resulting conclusion could differ. Appellees' assertion that "the district court unquestionably applied the right standard, even though it relied upon authority that is not directly controlling," is therefore wrong. See Appellees' Br. 39.

11

The Feamsters make the following arguments to support their position. First, they argue that "[a] day in which a business is not open cannot be a typical business day." Feamster Br. 32. But RMS had existed since 2005, and TAS Greenbrier Properties, LLC, which was part of the RMS controlled group, had employees throughout 2007. See J.A. 552-72. Because "all employees of trades or business[es] (whether or not incorporated) which are under common control shall be treated as employed by a single employer," 26 U.S.C. § 52(b)(1),[5] the fact that TAS Greenbrier Properties, LLC, had employees and functioned throughout the year undermines the Feamsters' argument that the "business" was not open until September 1, 2007.

Second, the Feamsters point to <u>Kidder v. H & B Marine Inc.</u>, 932 F.2d 347 (5th Cir. 1991), also a case involving COBRA claims. In <u>Kidder</u>, two corporations, each with fewer than 20 employees, merged. <u>Id.</u> at 349. Together, the two corporations had more than 20 employees. <u>Id.</u> at 350. The court held that the two corporations were properly treated as the same "employer" because the corporations were "owned entirely by the same four individuals," <u>id.</u> at 355; in other words, they were commonly

---

[5] We cite 26 U.S.C. § 52(b)(1) not because it is directly controlling, but because it provides a helpful articulation of the controlled-group principle that is the foundation on which the Feamsters' otherwise unsupported argument rests.

12

controlled <u>before</u> the merger. Here, by contrast, there are no allegations that Solacium and RMS were commonly controlled until September 1, 2007. The Feamsters' reliance on <u>Kidder</u> is therefore misplaced.

Third, the Feamsters argue that if the employees of other RMS-controlled entities are factored into the analysis to determine a typical business day, "the same principle would serve as justification for attributing Solacium's component employee groups to RMS during the prior period." Feamster Br. 34. This argument is unpersuasive. The employees of other entities in the RMS controlled group are relevant because 26 U.S.C. § 52(b)(1) requires that "all employees of trades or business[es] (whether or not incorporated) which are under common control shall be treated as employed by a single employer." The Feamsters cite no similar authority that would require including the number of employees of a second organization (here, Solacium) <u>before</u> that organization affiliates with the first organization (here, RMS).

Finally, the Feamsters cite to the language of the statute itself, which refers to "<u>all</u> employers." 29 U.S.C. § 1161(b) (emphasis added). The Feamsters cite no authority inferring from the word "all" that the inquiry should include employees of an entity that maintains constructive ownership of the direct employer for just a few months of the relevant calendar year; if

13

that were so, a large company's purchase of a small one on December 31 would render the small company's employees eligible for COBRA continuation coverage in the following year as if they had worked for the large employer for all of the prior year. Such a situation would lead to the absurd result that a small company acquired on December 31 would be treated differently from a single company that merely expands and increases the number of its employees throughout the year, such that it has 19 employees for six months and a day, and 20 or more for the remainder of the year. There is no reason to believe that Congress intended such a distinction between individual companies and companies acquired by other entities.[6]

## IV.

For the reasons set forth, the judgment of the district court is

<u>AFFIRMED</u>.

---

[6] Moreover, the interpretation the Feamsters propose lacks a coherent limiting principle. What if, for example, the Academy opened on December 1, rather than September 1 -- would typical business days be only those business days in the month of December? And if the Academy had opened in the final week of December, would typical business days include only that week? Such a result is clearly not contemplated by § 1161(b)'s insistence that we look to "typical business days."

14