# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11263

United States Court of Appeals
Fifth Circuit

**FILED**
August 31, 2016

Lyle W. Cayce
Clerk

SARAH MOZINGO MARTIN; MARY S. MOZINGO,

Plaintiffs - Appellants

v.

TREND PERSONNEL SERVICES; DAN W. BOBST,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-3953

Before STEWART, Chief Judge, and CLEMENT and HAYNES, Circuit Judges.

PER CURIAM:*

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, governs claims arising out of employee welfare benefit plans. The sole issue on appeal is whether a Bonus Agreement offered by employer Trend Personnel Services, Inc. ("Trend") to a select number of employees qualifies as an ERISA employee welfare benefit plan. The district court held that it does not. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-11263

I.

Trend is a staffing and recruiting firm owned and operated by Dan W. Bobst. Between 2000 and 2007, Sam Mozingo worked for Trend as an account representative. In 2003, Trend purchased life insurance policies for Mozingo and five other employees, pursuant to Key Employee Restricted Bonus Agreements. Pursuant to the Bonus Agreements, Trend would hold the insurance policies and pay the annual premiums for the duration of each key employee's employment with the company.

After voluntarily leaving Trend in 2007 and then being diagnosed with cancer in 2008, Mozingo requested that Trend transfer his insurance policy to his name. He designated his sister, Sarah Mozingo, as the primary beneficiary under the policy and his mother, Mary Mozingo, as the contingent beneficiary. The policy was transferred to Mozingo's name in August 2009 but lapsed six weeks later due to a lack of funding.[1] Mozingo died the following year.

The beneficiaries filed claims for breach of fiduciary duty and estoppel under ERISA.[2] They alleged that Bobst and Trend failed to pay the insurance policy premium, to keep Mozingo informed about the status of the policy, and to promptly transfer the policy to Mozingo after he left the company. They sought to recover as damages the $250,000 death benefit value of the policy. After a bench trial, the district court determined that the Bonus Agreement did not qualify as an ERISA employee welfare benefit plan because it was only offered to a handful of Trend employees and did not necessitate an ongoing

---

[1] Although the annual premium on the policy had last been paid by Trend in May 2006, the cash value of the policy kept the policy in force through July 2009.

[2] The beneficiaries filed a previous lawsuit in the United States District Court for the District of Kansas, asserting similar claims. There, the beneficiaries conceded before the district court that the Bonus Agreement was not an ERISA employee welfare benefit plan, but then argued for the first time on appeal that the Bonus Agreement was an ERISA plan. The courts did not decide the issue.

2

No. 15-11263

administrative scheme. Accordingly, the district court held that ERISA did not apply and dismissed the beneficiaries' claims. This appeal followed.

II.

The issue on appeal is whether the Bonus Agreement offered by Trend qualifies as an ERISA employee welfare benefit plan. "Typically, the existence of an ERISA plan is a question of fact that we review only for clear error." *Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008). "However, when the facts are undisputed, we treat the issue as one of law and review it de novo." *Id.*

III.

ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program which was . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1). To determine whether a particular plan qualifies as an ERISA employee welfare benefit plan, this court "ask[s] whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'—establishment or maintenance by an employer intending to benefit employees." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). "If any part of the inquiry is answered in the negative, the submission is not an ERISA plan." *Id.* The parties only dispute whether the Bonus Agreement satisfies the third requirement of the *Meredith* test. Thus, we must consider whether the two statutory elements of an ERISA employee welfare benefit plan

3

are satisfied: "(1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees." *Id.*[3]

In determining whether an employer "established or maintained" an employee welfare benefit plan by purchasing insurance for employees, this court "focus[es] on the employer . . . and [its] involvement with the administration of the plan." *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1452 (5th Cir. 1991). In a line of cases, this court has held that while

> the purchase of insurance does not conclusively establish a plan, fund, or program, [it] is evidence of the establishment of a plan, fund, or program [and] the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.

*Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 242 (5th Cir. 1990); *see also Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir. 1991). In *Memorial Hospital*, the court concluded that an employer established and maintained an ERISA employee welfare benefit plan where it provided group health care benefits—including life, accidental death and dismemberment, accident, prescription drug, and comprehensive medical insurance benefits— for all of its full-time employees and paid one-half of the monthly premiums. *Mem'l Hosp.*, 904 F.2d at 241-43. Then, in *Kidder*, the court applied *Memorial Hospital* to conclude that an ERISA employee welfare benefit plan existed where an employer purchased a group health insurance policy that covered all of its employees and paid a percentage of the monthly premiums. *Kidder*, 932 F.2d at 349-53. The court, however, did not "adopt the district court's apparent reasoning that the payment of premiums alone is sufficient to create a plan." *Id.* at 353.

---

[3] Because our analysis under the first element is dispositive, we do not address the second element.

More recently, this court held that the mere payment of insurance premiums for a select number of employees did not establish an ERISA employee welfare benefit plan. *See Shearer*, 516 F.3d at 279-80. In *Shearer*, the court held that an employer did not establish or maintain an ERISA employee welfare benefit plan where it paid the premiums on insurance policies for two employees but did not provide insurance for any other employees. *Id.* Distinguishing the plan in *Shearer* from those in *Memorial Hospital* and *Kidder*, the court reasoned that because the plans in those cases "were purchased for all of the company's employees, [that fact] lends greater support to the argument that a plan existed." *Id.* at 280.

In addition to purchasing insurance for employees, other factors can provide evidence that an employer established or maintained an employee welfare benefit plan. *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991). In *Hansen*, the court held that an employer established an ERISA employee welfare benefit plan where it issued a booklet encouraging all employees to participate in a group insurance plan and employed a full time employee benefits administrator. *Id.* The court reasoned that even though the employer "did not purchase the insurance for its employees," it "assume[d] some responsibility for the administration of the program." *Id.* This court has "consistently held," however, that if "an employer does no more than purchase insurance for its employees and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan." *Shearer*, 516 F.3d at 279; *see also Hansen*, 940 F.2d at 978 (requiring "meaningful degree of participation by the employer in the creation or administration of the plan").

Here, the beneficiaries rely on *Memorial Hospital* and *Kidder* to argue that the Bonus Agreement qualifies as an ERISA employee welfare benefit plan. They contend that Trend purchased life insurance policies for its six key

employees and paid annual premiums, which offers "substantial evidence that a plan, fund, or program has been established." *Mem'l Hosp.*, 904 F.2d at 242. They further contend that, as in *Hansen*, Trend employed a "benefits administrator" and thus assumed responsibility for administration of the plan.

Trend counters that these cases are distinguishable because the employers in *Memorial Hospital*, *Kidder*, and *Hansen* offered insurance benefits to all of their employees. Trend further counters that the Bonus Agreement is not an ERISA employee welfare benefit plan because making a once per year premium payment does not constitute an ongoing administrative scheme. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 3, 12 (1987) (holding that a Maine statute requiring employers to provide a one-time severance payment to plant employees in the event of plant closure did not establish, or require employers to maintain, an ERISA plan because "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation"); *Cantrell v. Briggs & Veselka Co.*, 728 F.3d 444, 451 (5th Cir. 2013) (holding that a deferred compensation arrangement did not constitute an ERISA plan because the amount of compensation was "based on a one-time calculation using a fixed formula, and writing a check each quarter is hardly an administrative scheme") (internal quotation marks omitted).

The beneficiaries are correct that purchasing "a[n] [insurance] policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." *Mem'l Hosp.*, 904 F.2d at 242. The court's more factually similar decision in *Shearer*, however, controls here. There, the court held that the mere payment of premiums on policies for two employees was not sufficient to demonstrate that the employer established or maintained an ERISA employee welfare benefit plan. *Shearer*, 516 F.3d at 280. Similarly here, Trend only paid once-per-year premiums on policies for a small

number of key employees[4]—in contrast to the employers in *Memorial Hospital*, *Kidder*, and *Hansen* that offered insurance policies to all of their employees. Further, unlike the employer in *Hansen*, Trend was not involved in the administration of the policies or submission of claims and did not employ a benefits administrator.[5] As in *Shearer*, Trend "d[id] no more than purchase insurance for its employees and ha[d] no further involvement with the collection of premiums, administration of the policy, or submission of claims," and therefore "has not established an ERISA plan." 516 F.3d at 279 (reciting "rule that the purchase of insurance alone is insufficient to demonstrate an ERISA plan").

IV.

We AFFIRM.

---

[4] Bobst testified that in 2009, Trend had more than 350 temporary employees.

[5] The beneficiaries characterize former employee Shonda Wigginton as a benefits administrator for the Bonus Agreement. When asked about the Bonus Agreement at trial, Wigginton testified that she "didn't deal with it per se" and that the premium bills went directly to the accounting department. When notices came from the insurance company, Wigginton would simply "[p]ut it in the file." The district court did not clearly err in finding that Trend did not employ a benefits administrator.