Ransel D. SPARKS, d/b/a Sparks Drive Inn, et al., Plaintiffs,

v.

LIFE INVESTORS INSURANCE COMPANY OF AMERICA, Defendant.

No. EC90–109–S–D.
1:92CV79–S–D.

United States District Court, N.D. Mississippi, E.D.

April 23, 1993.

Talmadge D. Littlejohn, New Albany, MS, for plaintiffs.

Daniel H. Fairly, Wells, Wells, Marble & Hurst, Jackson, MS, for defendant.

## OPINION

SENTER, Chief Judge.

These consolidated cases (the first filed by the insured; the second, by his spouse) involve allegations that defendant tortiously denied a claim for insurance benefits. Presently before the court are defendant's motions for reconsideration (in EC90–109) and for summary judgment (in 1:92CV79). The predominant question presented by both motions is whether ERISA governs these proceedings.

## BACKGROUND

This is not the first time the court has visited these cases. On the first occasion, in cause number EC90–109,[1] this court denied defendant's motion for summary judgment, finding that ERISA did not control and that plaintiff's state law claims were therefore not preempted and were not subject to summary dismissal. The basis of that ruling rested on defendant's failure to show little more than a mere purchase of a family insurance policy, which the Fifth Circuit has repeatedly held is insufficient to establish the existence of ERISA coverage. Defendant, feeling aggrieved by this ruling, moved, on the eve of trial, to amend the pretrial order so that it could present additional evidence that ERISA controlled this case. In response, this court, recognizing the impact that the ERISA question could have on the proceedings, continued trial and granted limited discovery for the "purpose of determining whether ERISA governs the subject policy."

After a period of discovery, various documents followed: a second lawsuit, cause number 1:92CV79;[2] defendant's motion for reconsideration in EC90–109; and defendant's motion for summary judgment in 1:92CV79. These cases were consolidated and are now before the court for rulings on the pending motions. Although styled differently, each requests identical relief, namely, that this court find that ERISA governs, thereby preempting plaintiff's claims for tortious denial of benefits and for punitive damages.

## DISCUSSION

The rise of litigation in the ERISA arena has brought forth a profusion of opinions from the Fifth Circuit on the issue now before this court. At the time the original motion for summary judgment was filed, guidance was limited; fortunately, that is no longer the case, and this court's task is now somewhat lessened. On this occasion, defendant has presented some additional evidence which, possibly because its relevance was uncertain at the time of the original motion, it did not bring to the court's attention previously. But it has also elucidated matters that were already in the record, the importance of which neither the parties nor this court recognized. The Fifth Circuit has now made it abundantly clear what this court must examine in determining ERISA coverage, and the court now turns its attention to that assignment.

---

1. That case was filed by Ransel Sparks, the insured under a policy issued by defendant, when a claim submitted on behalf of his wife, Karen Sparks, was denied.

2. In it, Karen Sparks, Ransel's wife, made claims identical to those raised by her husband in the first suit.

## I.

In determining whether ERISA governs a particular action, the court "ask[s] whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'—establishment or maintenance by an employer intending to benefit employees." *Meredith v. Time Insurance Co.*, 980 F.2d 352, 355 (5th Cir.1993).[3]

### A.

In answering the question of whether a particular arrangement constitutes an employee welfare benefit plan under ERISA, the court "must first satisfy itself that there is in fact a 'plan' at all." *Hansen v. Continental Insurance Co.*, 940 F.2d 971, 977 (5th Cir.1991). To measure the materiality of a purported plan, the court turns to a test devised by the Eleventh Circuit and consistently applied by this circuit: " 'In determining whether a plan, fund, or program ... is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.' " *Meredith*, 980 F.2d at 355 (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)).

■ In this case, the court is of the opinion that a plan does in fact exist, since a reasonable person could readily determine: (1) that the intended benefits included basic and major medical, life, and accidental death and dismemberment insurance; (2) that the beneficiaries were, at the least, all full-time employees working over thirty hours a week; (3) that the employer, Ransel Sparks d/b/a Sparks Drive Inn, offered to pay the premiums for this class of employees (and contractually obligated himself to pay at least fifty percent of the cost of those premiums); and (4) that benefits would be received by submitting written notice of claims "to our Home Office or to our agent." [4]

### B.

■ The second part of the court's analysis focuses on whether the plan falls within the safe-harbor provision promulgated by the Department of Labor. *See* 29 C.F.R. §§ 25.-10.3–1(j)(1)–(4). Under that provision, the insurance policy at issue is *not* a statutory employee welfare benefit plan if (1) Sparks, as the employer, did not contribute to the plan; (2) participation was voluntary; (3) Sparks's involvement in the plan was limited to collecting premiums and remitting them to defendant and to permitting defendant to advertise the plan; *and* (4) Sparks received no profit from administering the plan. *Gahn v. Allstate Life Insurance Co.*, 926 F.2d 1449, 1452 (5th Cir.1991). "The plan must meet all four criteria to be exempt." *Meredith*, 980 F.2d at 355.

■ Here, although Sparks testified in his deposition that he would not have paid the premiums for any employee except himself, of course, and his cousin, he admitted, as noted above, that he offered to pay the premiums for any full-time employee working over thirty hours a week. Furthermore, he contractually obligated himself to do just that when his wife completed and signed the "Participating Employer Application." Sparks attempts to undermine the significance of his wife's actions by arguing that he did not sign the application and his wife did not realize what she was signing. However,

3. The court is confused by the next statement in *Meredith:* "If any part of the inquiry is answered in the negative, the submission is not an ERISA plan." *Meredith*, 980 F.2d at 355. Certainly, if the court answers the first and third questions in the negative, i.e., the plan is not a reality or the employer did not establish or maintain the plan, then there is no ERISA coverage. However, if the court answers the second question in the negative, i.e., the plan does not fall within the safe harbor provision, rather than precluding coverage, ERISA may, in fact, govern. If, on the other hand, the court finds positively that a plan does fall within the safe harbor provision, only then is there no ERISA coverage. *See Hansen v. Continental Insurance Co.*, 940 F.2d 971, 976 (5th Cir.1991).

4. Sparks was provided an "Employers Administration Kit," which, among other things, included claims forms (which had to be completed by the employee, the employer, and the treating physician) and instructions for submitting those forms.

this argument overlooks another admission made by Sparks that he authorized and allowed his wife to execute the application on his behalf. Additionally, Sparks knew when he received the administration kit that defendant expected him to do more than simply remit premiums and advertise the plan. For example, the kit instructed Sparks how to enroll employees in the plan, how to report coverage changes, how to terminate an employee's coverage, how to covert coverage, and how to submit claims.

Because Sparks contributed to the plan and was expected to participate in the administration of the plan, the plan falls outside the safe harbor provision and is therefore not exempt from ERISA coverage under the second prong of the court's analysis.

### C.

The court therefore turns to step three to determine "whether the assumed plan falls within the broad parameters of ERISA." *Id.* In approaching this final analysis, the court considers "the two primary elements of an ERISA 'employee welfare benefit plan' as defined in the statute: 1) whether an employer established or maintained the plan; and 2) whether the employer intended to provide benefits to its employees." *MDPhysicians & Associates, Inc. v. State Board of Insurance,* 957 F.2d 178, 183 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992).

■ To determine whether an employer established or maintained an employee welfare benefit plan, the court must focus on the employer and his involvement with the administration of the plan. *Gahn,* 926 F.2d at 1452. Although an employer's purchase of insurance does offer substantial evidence that a plan has been established, *Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236, 242 (5th Cir.1990), "if an employer does no more than purchase insurance for [his] employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, [he] has not established an ERISA plan." *Hansen,* 940 F.2d at 978.

■ As noted above, defendant expected Sparks to have substantial involvement in the administration of the subject policy. Whether, in fact, Sparks ever performed any of the tasks outlined in the administration kit is irrelevant (especially in light of the fact that the policy was subsequently cancelled); by signing up to be a part of the trust, he was obligated to do more than simply collect and remit premiums.

"In addition to some meaningful degree of participation by the employer in the creation or administration of the plan, the statute requires that the employer have had a purpose to provide health insurance, accident insurance, or other specified types of benefits to its employees." *Hansen,* 940 F.2d at 978. Although Sparks argues that he had no intention of providing benefits to his employees and only wanted to procure certain coverage for his family, his admissions again belie his argument. Particularly, Sparks admitted that he "sought insurance coverage *for employees* of Sparks Drive Inn ..." and that he "did secure an 'insurance policy' *for said employees.*" (Emphasis added). In addition, Sparks's offer to pay the premiums for full-time employees further evidences, in this court's view, an intention to provide his employees with benefits. *See Kidder v. H & B Marine, Inc.,* 932 F.2d 347, 352–53 (5th Cir. 1991).

### II.

In conclusion, the court finds that the instant plan is governed by ERISA. Therefore, defendant's motion to reconsider and its motion for summary judgment are granted on this issue. Because this plan is controlled by ERISA, plaintiffs' state law claims are preempted, *see Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1465 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987), and their request for a jury trial is stricken. *See Calamia v. Spivey,* 632 F.2d 1235, 1237 (5th Cir.1980).