Robert GRAINGER, as the Legal Representative of the Estate of Bruce Grainger and Arlene Grainger, Appellants,

v.

WESTERN CASUALTY LIFE INSURANCE CO., Richard P. Dale, and Leland R. Kohutek, Appellees.

No. 01–93–00407–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 18, 1996.

Rehearing Overruled Sept. 12, 1996.

Joe K. Longley, Tim Labadie, Austin, for Appellants.

Richard G. Caldwell, Thomas M. Farrell, David P. Griffith, Houston, for Appellees.

Before O'CONNOR, WILSON and PRICE *, JJ.

## OPINION

WILSON, Justice.

Robert Grainger, representing the estate of his brother, Bruce Grainger, and Arlene Grainger (the Graingers), appeal from the trial court's order granting summary judgment for Western Casualty Life Insurance Co. (Western). The trial court found the insurance policy in this case was part of an "employee welfare benefit plan" governed by the Employee Retirement Income Security Act (ERISA). The court further found all causes of action asserted by the Graingers were therefore preempted as a matter of law.

The primary issues in this case are: (1) whether the Graingers waived error, if any, regarding Western's notice of intent to use unfiled discovery products; and (2) whether the summary judgment evidence established as a matter of law that the medical insurance policy purchased is governed by ERISA,

thus preempting the Graingers' state law claims. We affirm.

## Background to Lawsuit

Bruce Grainger was employed by Grainger, Inc. (the company), a small family-run business. In 1986, the company bought medical insurance policies from Western for each of its three full-time employees: Bruce, his brother Robert, and their father. The company paid all of the premiums on these policies through automatic bank drafts. The amount of available benefits under each policy was $100,000.

Beginning in December 1986 and continuing through July 1987, Bruce was hospitalized on numerous occasions, incurring bills in excess of $100,000. Bruce submitted these medical bills to Western for payment. Western refused payment, explaining the information it obtained from Bruce's physician showed he was suffering from a pre-existing condition as defined by the policy. Under the terms of the policy, Western was under no duty to pay for medical care resulting from such a pre-existing condition. Bruce's physician later informed Western, in August 1987, that his medical records were incorrect and Bruce's chest pains had begun just two or three weeks before his hospitalization. After receiving this information, Western paid the policy limit of $100,000, on November 10, 1987.

Bruce filed suit against Western on May 13, 1988, alleging violations of articles 3.62 and 21.21 of the Texas Insurance Code, section 17.50(a)(3) of the Deceptive Trade Practices–Consumer Protection Act (DTPA), ordinary and gross negligence, and breach of the duty of good faith and fair dealing. A derivative wrongful death claim brought by Arlene Grainger was added after Bruce died on August 26, 1992, while this action was still pending.

## Background to the Summary Judgment

Western moved for summary judgment claiming the state causes of action asserted

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Hous-

ton, sitting by assignment.

by the Graingers were preempted by ERISA. In its motion, Western argued the insurance arrangement constituted an ERISA plan because Bruce Granger's employer, the company, established and maintained the plan for the purpose of providing specific benefits to its employees.

With its motion for summary judgment, Western filed a notice of intent to rely upon answers to unfiled interrogatories and portions of unfiled deposition testimony. Without any discussion of the contents of the discovery, Western identified depositions (by deponent, volume, and page number) and plaintiffs' (Graingers') answers to interrogatories (by set and number of the interrogatory). The actual answers to the interrogatories and the excerpts of the deposition testimony were not included as part of the notice. At the end of the list of unfiled discovery, Western included the statement: "Any other discovery products not on file with the Clerk [are] specifically referred to in *Memorandum In Support of Defendants' Motion for Partial Summary Judgment*."

In the notice of intent, Western only listed the evidence on which it relied. In the memorandum in support of the motion, Western included a six-page summary of the evidence to the trial court with specific references to the page numbers of certain depositions. The Graingers did not challenge any of the statements in Western's narrative.

The Graingers filed two responses in opposition to Western's motion for summary judgment, as well as their own motion for summary judgment. In none of the documents filed by the Graingers did they object to Western's notice to rely on the unfiled discovery.

In their response and motion, the Graingers claim the policy was not part of an employee welfare benefit plan subject to ERISA regulations. They provided affidavits from Bruce and Robert Grainger, excerpts from depositions of Western employees and interrogatories answered by Western. According to the Graingers' evidence, Western issued

individual health and life policies to each of the company's three employees to replace a group policy previously issued by Prudential. Bruce and Robert claimed the company neither owned nor controlled or administered the replacement policies, and there was no intent for the company to establish a welfare benefit plan governed by ERISA. Admitting that all premiums for the three policies were paid by check written on the company's bank account, Bruce and Robert stated in their affidavits that all such premiums had to be repaid to the company from earned commissions. Because the company fell on hard times, Bruce was unable to repay the company. Three years after suit was filed and after the ERISA claim became known, Bruce executed a promissory note to the company for the past unpaid premiums. The note bore no interest rate and contained no terms for payment.

### Unfiled Discovery Products

■ In a supplemental brief filed after oral argument, the Graingers contend for the first time that Western did not properly submit its summary judgment evidence. On appeal, the Graingers now argue that the deposition testimony relied on by the trial court was not properly submitted because copies of the excerpts were not filed with the court.[1] The Graingers contend the trial court had no evidence before it to consider in support of the defendant's motion for summary judgment.

The Graingers did not object in the trial court to the method or procedures by which the Western submitted its summary judgment evidence. Furthermore, none of the Graingers' responses to the motion for summary judgment filed in the court below brought this issue to the trial court's attention. Finally, no one argues, even now, that the judge did not base his ruling on the body of evidence the Graingers belatedly challenge as not filed. We find the Graingers' complaint has been waived because of the lack of

---

1. The Graingers argue in their brief that "this rule [166a(d)] does not, however, abolish the requirement to file the excerpts from depositions being relied upon nor the requirement to properly authenticate those excerpts." The authentication argument has been settled adversely to the Graingers' position by *McConathy v. McConathy*, 869 S.W.2d 341 (Tex.1994).

any objection in the trial court. TEX. R.APP.P. 52(a).

We overrule the Graingers' supplemental point of error.

## ERISA

In points of error one and two, the Graingers contend the trial court erred in granting Western's motion for summary judgment, and erred in denying their motion for summary judgment. Western argued in its motion for summary judgment that the company established a medical insurance plan governed by ERISA, therefore preempting the Graingers' state law claims. The Graingers argued in their motion for summary judgment that the medical insurance arrangement covering Bruce Grainger was not part of an ERISA plan as a matter of law.

■ To sustain a summary judgment, the movant must establish that no genuine issue of material fact exists, and he is entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). We accept all evidence favorable to the non-movant as true, indulge the non-movant with every favorable reasonable inference, and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When two parties file motions for summary judgment and one is denied and the other granted, we may review the denial and render judgment if the appealing party complains of both the granting of the opponent's motion and the denial of its own. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Phillips Natural Gas Co. v. Cardiff*, 823 S.W.2d 314, 317 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

The issue we address is whether the summary judgment evidence presented to the trial court demonstrated as a matter of law that the company, in purchasing medical insurance policies from Western for its employees, including Bruce Grainger, established an "employee welfare benefit plan" governed by ERISA. If it did, ERISA preempts the Graingers' state law claims and the trial court acted properly in granting summary

judgment for Western and denying summary judgment for the Graingers.

■ The Employment Retirement Income Security Act of 1974 subjects employee benefit plans to federal regulation. ERISA regulates both pension plans and welfare plans that provide benefits in the event of illness, accident, disability, death or unemployment. 29 U.S.C.S. § 1002(1) (1988); *Cathey v. Metropolitan Life Ins. Co.*, 805 S.W.2d 387, 388 (Tex.), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2855, 115 L.Ed.2d 1023 (1991). Congress enacted ERISA to protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans. *Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir. 1982) (en banc); *see also Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir.1990) (adopting *Donovan* for the Fifth Circuit). Toward that goal, ERISA applies to any "employee benefit plan" that is established or maintained by an employer or employee organization. 29 U.S.C.S. § 1003(a) (1988); *Memorial Hosp.*, 904 F.2d at 240; *Donovan*, 688 F.2d at 1370. There are two types of employee benefit plans: "employee welfare benefit plans" and "employee pension benefit plans." 29 U.S.C. § 1002(3) (1988). This case centers around determining the existence of the former.

ERISA defines an "employee welfare benefit plan" as

[A]ny plan, fund or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). The arrangement presented in this case involves medical insurance—customarily within the meaning of an employee welfare benefit plan. However, determining whether a plan exists and is in fact an ERISA plan requires careful scrutiny and application of standards set forth by Congress and the federal judiciary.

Whether a particular set of insurance arrangements constitutes an employee welfare benefit plan is a question of fact. *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 976 (5th Cir.1991). In examining a particular arrangement to determine whether it qualifies as an employee welfare benefit plan under ERISA, a court should inquire whether a plan: (1) exists; (2) falls within the exceptions established by the Department of Labor; and (3) satisfies the primary elements of an ERISA employee welfare benefit plan—establishment or maintenance by an employer intending to benefit its employees. *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir.1993).

Thus, a court confronted with the question of whether a plan qualifies as an employee benefit plan within the scope of ERISA must initially satisfy itself that there is in fact a plan at all. *Meredith,* 980 F.2d at 355; *Hansen,* 940 F.2d at 977. To determine whether a plan, fund, or program exists, a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended (1) benefits, (2) beneficiaries, (3) source of financing, and (4) procedures for receiving benefits. *Donovan,* 688 F.2d at 1373.

The summary judgment evidence presented to the trial court included a copy of Western's "Major Medical" insurance policy purchased for Bruce by the company. That policy explains the medical benefits provided and lists the beneficiaries covered as the insured and all dependant members of the insured's family. The procedures for submitting claims and receiving benefits under the policy are also set out in the terms of that document.

It is undisputed that the company paid all the policy premiums for its employees. The Graingers presented affidavits of Bruce and Robert Grainger that they expected and intended to repay the company for the premiums it paid on their policies. However, an interested witness's testimony may be considered adequate summary judgment evidence only if it is (1) uncontroverted, (2) clear, positive, and direct, (3) otherwise credible and free from contradictions and consistencies, and (4) could have been readily controverted. Tex.R.Civ.P. 166a(c). Statements of interested parties, testifying as to what they knew or intended, are self-serving, do not meet the standards for summary judgment proof, and will not support a motion for summary judgment. *Clark v. Pruett,* 820 S.W.2d 903, 906 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Allied Chemical Corp. v. DeHaven,* 752 S.W.2d 155, 158 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Issues of intent and knowledge are not susceptible to being readily controverted and are inappropriate for summary judgment. *Allied Chemical,* 752 S.W.2d at 158; *see Bankers Commercial Life Ins. Co. v. Scott,* 631 S.W.2d 228, 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). We conclude the portions of Bruce and Robert Grainger's affidavits concerning their intent to repay the company for the premiums do not meet the standard for summary judgment proof.

A promissory note, signed September 23, 1991, was also introduced. The note bears no interest rate, contains no payment schedule, and was executed three years after the suit was filed. No evidence was presented that Bruce, or any other employee, ever actually repaid the company for the premiums it paid to Western. The summary judgment evidence therefore established the company as the source of financing for this arrangement for its employees.

In this case, we conclude a reasonable person could readily determine from these factual circumstances the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits under the policy purchased for Bruce Grainger by the company. Therefore, we determine the evidence presented to the trial court established the existence of a plan. We must next examine this plan to determine if it constitutes an employee welfare plan covered by ERISA.

To determine whether a plan qualifies as an employee welfare benefit plan, a court must inquire whether the plan falls within the "safe harbor" provision prescribed by the Department of Labor. *Meredith,* 980 F.2d at 355; *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1452 (5th Cir.1991). That provision provides that a plan is *not* an

ERISA plan if: (1) the employer does not contribute to the plan; (2) employee participation is voluntary; (3) the employer's role is limited to collecting premiums through payroll deductions or checkoffs and remanding the premiums once collected to the insurer; *and* (4) the employer received no profit from the plan.[2] The plan in question must meet all four criteria to be exempt from ERISA. *Gahn*, 926 F.2d at 1452; *Sparks v. Life Investors Ins. Co. of America*, 818 F.Supp. 945, 947 (N.D.Miss.1993).

■ The summary judgment evidence indicates the company purchased the insurance policies for all its employees and contributed to the plan by paying all premiums for those policies. The company's role was not limited to collecting premiums from its employees and remitting them to the insurer because it in fact paid the premiums without reimbursement. The evidence presented to the trial court does not indicate whether the employees' participation in the company's purchase of medical policies was voluntary. Although the company listed the policies as assets and showed deductions for premium payments on its tax returns, there was no evidence presented that the company profited directly from the plan. Because the plan concerned here does not meet all four criteria of the Department of Labor's "safe harbor" provision, we conclude the plan is not *exempt* from ERISA coverage. However, we must still determine whether the plan falls within the parameters of ERISA.

■ There are two primary elements of an ERISA employee welfare benefit plan. A court must consider: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide certain benefits to its employees. *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 183 (5th Cir.), *cert. denied*, 506 U.S. 861, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992); *Hansen*, 940 F.2d at 978. To determine whether an employer established or maintained an employee welfare benefit plan, the court must focus on the actions of the employer and its involvement

with the administration of the plan. *Hansen*, 940 F.2d at 978; *Gahn*, 926 F.2d at 1452.

The Graingers maintain this case concerns merely the purchase of an insurance policy by the company for Bruce Grainger, and rely on *Taggart Corp. v. Life & Health Benefits Admin., Inc.*, 617 F.2d 1208, 1211 (5th Cir. 1980), *cert. denied sub nom. Taggart Corp. v. Efros*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), for the proposition that the bare purchase of an insurance policy does not, in and of itself, establish the existence of an ERISA plan. Although the Graingers correctly cite the holding of *Taggart*, that case has since been factually distinguished because it involved a corporation composed of a single employee who was essentially purchasing insurance for himself and his family. *Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir.1991). An employer's purchase of a group policy or multiple policies covering a class of employees, and payment of insurance premiums on behalf of its employees, has been held to be "substantial evidence" that a plan, fund or program was established. *Kidder*, 932 F.2d at 353; *Memorial Hosp.*, 904 F.2d at 243; *Donovan*, 688 F.2d at 1373. Therefore, we find *Taggart* distinguishable on its facts.

■ The Graingers presented additional summary judgment evidence they contend demonstrates, as a matter of law, that the company did not establish or maintain a plan covered by ERISA, or at least raises a fact question as to ERISA's coverage. The Graingers' evidence includes Western's interrogatory answers and the deposition of Leland Kohutek, a vice-president of Western. The Graingers offered the following summary judgment evidence:

(1) Western did not provide evidence of a written plan document or the identity of a plan administrator.[3]

(2) Neither the company nor Western complied with ERISA reporting requirements, in that each plan participant was not furnished with a summary plan description, a statement of assets and lia-

---

**2.** 29 C.F.R. §§ 2510.3–1(j)(1)–(4) (1994); *Memorial Hosp.*, 904 F.2d at 241 n. 6.

**3.** *See* 29 U.S.C. §§ 1002(16)(A), 1102(a) (1988).

bilities, and a statement of receipts and disbursements.[4]

(3) Neither the company nor Western provided a procedure for review of disputes arising under the plan.[5]

(4) Western's representative testified by affidavit that at the time Western sold the policy to the company, it sold only individual policies and did not sell group policies.

(5) The company purchased individual medical policies for its employees, rather than a group policy, and the policy in question was issued in Bruce Grainger's name individually.

The Graingers contend ERISA does not cover the plan concerned here because the company did not prepare or distribute a written plan document or comply with ERISA reporting requirements. Once it is determined a plan is covered by ERISA, the act's regulations provide that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a). Western responds, however, that no such written document is required. The initial determination of ERISA's coverage does not require a formal, written plan. *Memorial Hosp.*, 904 F.2d at 241; *Donovan* 688 F.2d at 1372. The act defines an employee welfare benefit plan as "*any* plan, fund or program ... established or maintained" by an employer or employee organization. 29 U.S.C. § 1002(1) (emphasis added).

In addition, ERISA's fiduciary and reporting responsibilities are not prerequisites to coverage under the act, but only arise once it has been determined that ERISA covers an employer's plan. *Memorial Hosp.*, 904 F.2d at 241 n. 5; *Donovan*, 688 F.2d at 1372. In *Donovan*, the court observed:

[B]ecause the policy of ERISA is to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan, ... it would be incongruous for persons establishing or maintaining informal or written employee benefit plans ... to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards.

688 F.2d at 1372. Although ERISA imposes a fiduciary requirement that "all assets of an employee benefit plan shall be held in trust by one or more trustees,"[6] this provision does not apply "to any assets of a plan which consist of insurance contracts or policies issued by an insurance company qualified to do business in a State." 29 U.S.C. § 1103(b)(1) (1988 & Supp. V 1993); *Memorial Hosp.*, 904 F.2d at 236 n. 9. We conclude any lack of compliance by the company with the reporting and fiduciary standards of ERISA does not preclude the plan from coverage under the Act.

■ The Graingers argue that the summary judgment evidence showing individual policies were purchased by the company for its employees, including Bruce Grainger, also prevents ERISA's coverage from extending to its plan. But as we noted above, ERISA's coverage of employee welfare benefit plans extends to "any plan," and does not require that the plan established be a group insurance plan. The Act specifically envisions that an employer may establish an employee welfare benefit plan "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1); *see Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). We also note that the purchase of a group policy "or multiple policies covering a class of employees" may be considered substantial evidence of the establishment of a plan. *Donovan*, 688 F.2d at 1373. Therefore, the fact that the policies purchased by the company were individual policies, rather than a group policy, does not exempt them from ERISA coverage as a matter of law.

■ Western in turn presented summary judgment evidence, including portions of affidavits of Bruce and Robert Grainger. Western argues the following additional evidence

---

4. *See* 29 U.S.C. § 1021(a) (1988 & Supp. V 1993).

5. *See* 29 U.S.C. § 1133 (1988).

6. 29 U.S.C. § 1103(a) (1988).

demonstrates the company's participation in the "establishment or maintenance" of an ERISA plan:

(1) The company, not Bruce Grainger individually, began the search that ultimately resulted in the purchase of the policy.

(2) The policy was presented to the officers of the company as suitable for the needs of a small business.

(3) The company bought policies for all full-time employees.

(4) The company made the initial payments for the policies and all subsequent premium payments.

(5) The company's tax returns for 1987, 1988, and 1989 showed deductions for premium payments and listed the policies as assets.

(6) The premiums were treated as a payroll benefit in the company records.

(7) All correspondence with Western was mailed to the company's address.

(8) The company officers were involved in attempting to expedite Bruce Grainger's receipt of benefits when Western initially denied his claim.

We conclude the evidence presented to the trial court established as a matter of law Western's contention that the company participated in the establishment or maintenance of the plan. As set out above, it must next be determined whether the company intended to provide certain benefits to its employees.

■ In addition to some meaningful degree of participation in the creation or administration of the plan, an employer must have "a purpose to provide health insurance, accident insurance, or other specified types of benefits to its employees." 29 U.S.C. § 1002(1); *Hansen,* 940 F.2d at 978; *Sparks,* 818 F.Supp. at 948. The Graingers assert the company did not intend to create a plan governed by ERISA, and in their affidavits Bruce and Robert Grainger both state the company had no such intention. Western argues the intent of an employer in establishing a plan is not dispositive of this issue.[7]

The determination of ERISA's coverage over a given plan turns on resolving whether the plan satisfies the statutory definition of an employee welfare benefit plan, not whether the entity that established or maintained the plan intended ERISA to govern the plan. *MDPhysicians,* 957 F.2d at 183 n. 7.

■ The summary judgment evidence presented to the trial court shows the company sought medical insurance coverage for its employees, purchased and secured those policies, and paid all premiums due. Although the company may not have intended to create an ERISA plan, the determinative issue at this part of the analysis is more accurately framed as whether an employer intended to provide certain benefits to its employees. We hold the summary judgment evidence supports the conclusion as a matter of law that the company intended to provide certain medical insurance benefits to its employees.

Therefore, based on the evidence presented to the trial court, we conclude the medical insurance arrangement set up by the company constituted an employee welfare benefit plan covered by ERISA as a matter of law. Accordingly, we hold the trial court did not commit error in denying the Graingers' motion for summary judgment.

■ Once it is determined an employee benefit plan is covered by ERISA, the broad preemptive power of the Act takes effect. *See Cathey,* 805 S.W.2d at 389–90. A state law, including all laws, decisions, rules, regulations, or other action having the effect of law, is preempted by ERISA if it "relates to" an ERISA plan. 29 U.S.C. §§ 1144(a), (c)(1) (1988). The United States Supreme Court has stated that the words "relate to" should be construed expansively. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987); *see Cathey,* 805 S.W.2d at 390. ERISA preemption applies not only to state laws but to all forms of state action dealing with the subject matters covered by this federal statute. 29 U.S.C. § 1144(c)(1); *see also Shaw*

---

7. Additionally, as addressed earlier, statements by an interested party concerning his intent will

not support a motion for summary judgment. *Clark,* 820 S.W.2d at 906.

*v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

The claims brought by the Graingers against Western all fall within the broad category of state law claims preempted by ERISA. Therefore, we also hold the trial court did not commit error in granting summary judgment for Western.

We overrule the Graingers' points of error one and two.

### Texas Insurance Code

In point of error three, the Graingers assert the trial court erred in denying their motion for summary judgment relating to former article 3.62 of the Texas Insurance Code.[8] The Graingers maintain Western did not pay the claim within 30 days of demand, and thus under former article 3.62 they are entitled to delay damages.

As we have noted, ERISA has broad preemptive power. The Act also preempts claims made under article 3.62. *Cathey,* 805 S.W.2d at 391; *see also Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 n. 1 (Tex.1994) ("ERISA's remedies are exclusive, and do not include extracontractual compensatory or punitive damages."). Because our analysis of points of error one and two leads us to conclude Western presented sufficient summary judgment evidence to support the finding that the plan is governed by ERISA, therefore preempting a claim under article 3.62, we hold the trial court correctly denied the portion of the Graingers' summary judgment motion relating to former article 3.62 of the Texas Insurance Code. We overrule point of error three.

Finding no reversible error, we affirm the judgment of the trial court.

PRICE, Justice (Assigned), dissenting.

The outcome of this appeal depends upon the interpretation of TEX.R.CIV.P. 166a(d). It states, in pertinent part:

Discovery products not on file with the clerk may be used as summary judgment evidence if ... *a notice containing specific references to the discovery* ..., are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs....

(Emphasis added.)

Appellants sued Western Casualty Life Insurance Co. (Western) asserting several state causes of action for Western's failure to timely pay benefits under an insurance policy. Western moved for summary judgment claiming these state causes of action were preempted by ERISA.

For evidence to support this claim, Western filed its notice, pursuant to rule 166a(d), of intent, to rely upon answers to unfiled interrogatories and portions of unfiled deposition testimony. This notice did not include either the answers to the interrogatories or the excerpts from the depositions. It merely cited page numbers to the unfiled discovery. It also made no reference to any other instrument where this information could be found. A narrative recitation of this evidence was included in a memorandum of law submitted by Western to the trial court. The actual language was never offered.

The question to be resolved is whether Western's proof, contained in the unfiled discovery, was properly before the court so the trial judge could consider it in rendering a decision. The majority, without citing any authority, says that it was. They hold that rule 166a(d) does not require the actual language from unfiled discovery to be submitted to the court. In line with this holding, they conclude that Western's citations to pages in unfiled depositions and to references in unfiled interrogatories satisfied the notice requirement of rule 166a(d) and, thereby, properly placed the questioned evidence before the trial court.

We know that a trial judge must base a decision only on evidence legally before the court. In summary judgment proceeding, TEX.R.CIV.P. 166a(d) specifies the items the trial court may consider in arriving at a decision. The rule mandates that all such

---

8. Act of June 28, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex.Gen.Laws 920, *repealed by* Act of June 6, 1991, 72nd Leg., R.S., ch. 242, § 12.01(2), 1991 Tex.Gen.Laws 1133 (current version at TEX. INS.CODE ANN. art. 21.55 (Vernon 1995)).

items be on file with the clerk before judgment; otherwise, they may not be considered. *Id.* This rule makes sense because if any of those items are not on file, they are not part of the summary judgment record and consequently not before the court. The trial court is not required to search sources outside the record to access information contained in unfiled items.

In subpart (d) of 166a, the rule does, however, make provisions for the court to access unfiled discovery. A notice containing *specific references* to the discovery must be filed with the clerk and served on all parties. Tex.R.Civ.P. 166a(d).

The majority inferentially defines "specific references" in the present case as cite references to page numbers only. If the majority is correct, and the actual evidence necessary for summary judgment consideration remains unfiled, how does the trial judge access this information to arrive at a proper decision? The majority never tells us. The fact is, there is no mechanism under rule 166a for the trial judge to access this information. That is why the actual language of the unfiled discovery needs to be included in the notice.

Here, however, it appears, although they do not make it clear, that the majority is claiming the memorandum Western filed setting out a summarized version of its proof was sufficient to put the appellants, as well as the trial court, on notice as to the actual evidence. I disagree. A memorandum is nothing more than an argument and is not a proper document to legitimately place evidence before a trial court.

The majority is attempting to characterize the memorandum as being similar to an appellate brief. This is likewise not true. Briefs are creatures of rule, regulated as to content and substance. *See, e.g.,* Tex. R.App.P. 74. Memoranda are arguments, not regulated in any fashion.

Western's rule 166a(d) notice does not reference the memorandum as the source of the questioned evidence. In fact, the memorandum does not recite the evidence, it only paraphrases it in narrative form. The memorandum was Western's way of arguing its position before the trial court. It was not meant for any other purpose and certainly does not serve any.

In support of its holding, the majority cites no authority, and in a footnote misstates the holding in *McConathy v. McConathy,* 869 S.W.2d 341 (Tex.1994). The supreme court in *McConathy* stated:

Rule 166a(d) requires parties to provide a "statement of intent" to use unfiled discovery as summary judgment proof. This requirement is satisfied where the discovery is attached to a summary judgment motion or response and the motion or response clearly relies on the attached discovery as support.

*Id.* at 342 n. 2.

In *E.B. Smith Co. v. United States Fidelity & Guar. Co.,* 850 S.W.2d 621, 624 (Tex. App.—Corpus Christi 1993, writ denied), the nonmovant's statement of intent to use unfiled discovery contained only citations to depositions and broad, conclusory statements about their content and effect. The court of appeals held that the statement did not comply with rule 166a(d); thus, the evidence was not properly before the trial court when it rendered summary judgment. *Id.* The court of appeals interpreted the term "specific references" to mean that the party relying on unfiled discovery "must show the court language from an unfiled deposition or other unfiled discovery document before the court rules on the summary judgment motion." *Id.*

The majority holds that appellants waived their right to complain on appeal about Western's failure to notice the actual language in the unfiled discovery. They claim the appellants should have objected in the trial court about Western's inadequate notice so that the trial judge could require Western to correct its mistake. This holding makes no sense.

If the majority's holding is wrong, and the actual language is required to be included in the notice, then Western's evidence was never before the trial court. In spite of what the majority thinks, the failure to object to evidence not before the court does not place it before the court. So what do the appel-

lants waive by failing to complain in the trial court about Western's inadequate notice?

Sufficiency of the evidence can always be raised for the first time on appeal. TEX. R.APP.P. 52(d). The law does not require an objection in the trial court to preserve error. *Id.* Because rule 166a(c) and (d) regarding summary judgment evidence specify the items the trial court can consider and how they are to be placed before the court, a party who fails to comply with their provisions should not be allowed the luxury of using evidence from outside sources if the opposing party fails to object.

In conclusion, I disagree with the majority's holding that Western's mere references to page numbers was sufficient either to put the appellants on notice of intent to use unfiled discovery or to place the specific proof before the court. I also disagree with the majority's holding that the appellants waived their right to complain on appeal. This defies logic. Western had no evidence before the court to support its summary judgment claim and the case should be remanded to the trial court. I therefore respectfully dissent.