**Felix FOJTIK, Appellant,**

v.

**CHARTER MEDICAL CORPORATION, d/b/a Charter Hospital of Corpus Christi, and Valerie Bullock, Appellees.**

No. 13–97–469–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 21, 1999.

Rehearing Overruled Feb. 18, 1999.

---

1. Clayburn was represented by retained counsel when he pleaded guilty and was sentenced.

Charles Manning, Beeville, for Appellant.

Lauren Beck, Richard A. Sheehy, McFall, Sherwood & Sheehy P.C., Houston, for Appellees.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION

CHAVEZ, Justice.

Felix Fojtik appeals from a take-nothing summary judgment entered against him on his claim against Charter Medical Corporation. Fojtik had brought a false imprisonment cause of action[1] against Charter arising from his stay at a Charter hospital where he was treated for alcoholism. Fojtik argues in a single point of error that the trial court erred in granting summary judgment to Charter because issues of material fact existed regarding whether Fojtik was falsely im-

---

1. Although Fojtik's pleadings appear to assert a claim for negligence as well as false imprisonment, Fojtik concedes that his negligence allega-

prisoned. We affirm the judgment of the trial court.

## Record on Appeal

The first matter that must be addressed is a dispute between the parties regarding the contents of the record on appeal. The summary judgment pleadings in this case include a motion for summary judgment and a supplemental motion for summary judgment filed by Charter, and a response to Charter's motions filed by Fojtik, all of which are included in the record. The trial court signed the summary judgment in favor of Charter on June 19, 1997. On August 14, 1997, Fojtik filed several more documents, including a complete transcript of a deposition of Felix Fojtik accompanied by sixty-five exhibits, and complete transcripts of depositions of Dorrill Nabours and Valerie Bullock. Charter contends that, because these documents were not attached to Fojtik's response to the motion for summary judgment and were not before the trial court at the time it granted the summary judgment, they may not be considered on appeal.

Fojtik contends that these depositions should be considered under rule 166a(d)'s provision for using unfiled discovery products as summary judgment evidence if notice is provided. Rule 166a(d) provides:

**Appendices, References and Other Use of Discovery Not Otherwise on File.** Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such

---

tions are only "explanatory" of his false imprisonment claim.

proofs are to be used to oppose the summary judgment.

TEX.R. CIV. P. 166a(d).

 The term "specific references" means that the party relying on unfiled discovery, by its notice and statement of intent, must show the court language from the unfiled discovery before the court rules on the summary judgment motion. *Salmon v. Miller*, 958 S.W.2d 424, 428 (Tex.App.—Texarkana 1998, pet. denied); *E.B. Smith Co. v. United States Fidelity & Guar. Co.*, 850 S.W.2d 621, 624 (Tex.App.—Corpus Christi 1993, writ denied). It is incumbent on the party relying on unfiled summary judgment evidence to show that the substance of unfiled discovery was presented to the trial court before it ruled on a motion for summary judgment. *E.B. Smith*, 850 S.W.2d at 624.

Fojtik contends that sufficient notice of the unfiled discovery he wished to rely on was provided in his response to Charter's summary judgment pleadings, which contains an objection to the probative value of excerpts from the depositions of Fojtik and Bullock used by Charter. We do not agree. Fojtik's objection was an objection to Charter's use of the depositions, not notice of his own use, and does not indicate in any way that he wished the trial court to consider the depositions as summary judgment evidence in *his* favor. Furthermore, despite the rule's requirement of "specific references," Fojtik objected only to the excerpts used by Charter and made no reference to the complete depositions he wishes us to consider.

Fojtik relies on *Grainger v. Western Cas. Life Ins. Co.*, 930 S.W.2d 609 (Tex.App.—Houston [1st Dist.] 1996, writ denied) for the proposition that notice under rule 166a(d) may simply refer to the unfiled discovery without taking any steps to ensure that the trial court has access to the unfiled material. In *Grainger*, the appellee had filed a notice of intent to rely on unfiled depositions and answers to interrogatories as well as a summary of the unfiled evidence, but did not provide the trial court with actual copies of the unfiled material relied on. The *Grainger* court did not address whether this procedure complied with the rules, but rather held that the appellant had waived any error by failing to object to this procedure before the trial court. *Grainger*, 930 S.W.2d at 613–14. In the case before us, Fojtik did not provide any indication that he wished to rely on the complete depositions until after the summary judgment had been granted. We conclude that *Grainger* provides no support for Fojtik's position.

We hold that, because Fojtik did not show the trial court the language from the unfiled discovery that he wished to rely on, and the substance of the unfiled discovery was not presented to the trial court before it ruled on the motion for summary judgment, the unfiled discovery documents are not part of the record which may be considered on appeal. *E.B. Smith*, 850 S.W.2d at 624. We will confine our review to the summary judgment pleadings and the evidence attached that were filed before summary judgment was rendered.

## Background Facts

Fojtik's admission to Charter was preceded by an "intervention," where Dorrill Nabours and Valerie Bullock from Charter, along with a group of Fojtik's family and friends, confronted him and told him that he needed to go through an inpatient treatment at Charter for alcohol abuse. Fojtik's medical records indicate that he told Charter staff he had admitted himself to Charter because those conducting the "intervention" had told him that, if he did not voluntarily admit himself, they would have him committed to the hospital and have him brought in wearing handcuffs.[2] When admitted, Fojtik was angry about being at Charter and refused to be photographed or to agree to permit Charter to contact him after he left the treatment program. While at the hospital Fojtik made several requests for a "pass" permitting him to leave the Charter facility. His initial re-

---

2. Upon a showing that a person is chemically dependent and evidences an imminent, substantial risk of serious harm to himself or to others, a judge or magistrate may order that such person be apprehended and transported to a treatment facility. TEX. HEALTH & SAFETY CODE ANN. §§ 462.042–43 (Vernon 1992 & Supp.1998).

quests were denied on the ground that he was not "eligible" for a pass until he was further into his stay.[3] Fojtik expressed his opinion that he was getting a "raw deal" because he was "locked up and couldn't get away." Later Fojtik was granted passes for a few hours at a time, and always returned to Charter voluntarily and on time. Fojtik explained that he had vowed to follow all of the rules at Charter. Although nothing in the record explains the reason Fojtik made this "vow," he argues on appeal that he had decided to follow all the rules only because he hoped that obedient behavior might speed his release.

Charter produced summary judgment evidence that Fojtik was free to leave at any time. Charter employees explained that, although they used a system of "passes" and preferred to follow certain procedures when patients left the hospital, if a patient insisted on leaving without following Charter procedures, Charter would permit the patient to leave. Charter also refers us to Fojtik's admission documents, which indicate that he consented to inpatient treatment.

### Legal Standards

Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex. 1993) (defendant who conclusively negates one of the essential elements of the plaintiff's cause of action is therefore entitled to summary judgment). The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). However, once the movant establishes that it is entitled to summary judgment, the burden shifts to the non-movant to show why summary judgment should

not be granted. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989). In reviewing a summary judgment, we accept all the non-movant's proof as true and indulge every reasonable inference in the non-movant's favor. *Science Spectrum,* 941 S.W.2d at 911. All doubts about the existence of a genuine issue of a material fact must be resolved against the movant. *Johnson County Sheriff's Posse, Inc. v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996).

The elements of a false imprisonment cause of action are: (1) willful detention by the defendant, (2) without consent of the detainee, and (3) without authority of law. *Sears, Roebuck, & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985). A detention may be accomplished by violence, by threats, or by any other means that restrain a person from moving from one place to another. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 645 (Tex.1995).

Where it is alleged that a detention is effected by a threat, the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a just fear of injury to his person, reputation, or property. *Id.* Threats to call the police are not ordinarily sufficient in themselves to effect an unlawful imprisonment. *Morales v. Lee,* 668 S.W.2d 867, 869 (Tex.App.—San Antonio 1984, no writ)(citing W. PROSSER, TORTS § 11 (4th ed.1971)). In determining whether such threats are sufficient to overcome the plaintiff's free will, factors such as the relative size, age, experience, sex, and physical demeanor of the participants may be considered. *Black v. Kroger Co.,* 527 S.W.2d 794, 800 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd)(citing *A. Harris & Co. v. Caldwell,* 276 S.W. 298 (Tex.Civ.App.—Dallas, 1925, writ dism'd)).

### Charter's Summary Judgment Pleadings

First, we consider Fojtik's argument that summary judgment was improper

**3.** Fojtik also directs us to other places in his medical records, which Fojtik argues indicate that he made other requests to leave to take care of his business. Although it is not entirely clear (in part because these requests are recorded in handwritten notes that are not always legible) it appears that steps were taken to address Fojtik's business concerns while he remained at the hospital, such as offering to have his wife and secretary brought to the Charter facility.

on the "consent" and "authority of law" elements of false imprisonment because Charter's summary judgment motion failed to offer any argument on these issues. While it is true that summary judgment can only be granted on grounds raised in the motion, *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993), we hold that Charter adequately raised these grounds in its motion, and, therefore, they may be considered as bases for the summary judgment. Grounds for summary judgment are sufficiently specific if they give fair notice of the claim involved to the non-moving party. *Sledge v. Mullin*, 927 S.W.2d 89, 95 (Tex.App.—Fort Worth 1996, no writ); *Dear v. City of Irving*, 902 S.W.2d 731, 734 (Tex.App.—Austin 1995, writ denied). Under the heading "Plaintiff Was Not Willfully Detained Without His Consent," Charter argued that Fojtik had voluntarily admitted himself to its hospital, had been permitted to leave and had returned voluntarily, and that the doors leading out of the hospital were never locked. Under the heading "Plaintiff Was Not Detained Without Authority of Law," Charter argued that Fojtik's consent to his stay at Charter negated any possibility that he was detained without authority of law. We hold that Charter's summary judgment motion adequately raised the issues of "consent" and "authority of law."

### Whether Fojtik Was Restrained

■ Although Fojtik was not physically restrained, he alleges that he was detained against his will by threats that, if he did not submit to his detention, he would be forcibly committed and "brought in in handcuffs." Fojtik also contends that Charter used "other means" in addition to threats of commitment in order to restrain him. We first consider whether the evidence raises a question of fact regarding whether Fojtik was restrained by threats.

A review of false imprisonment case law is instructive. In *Black v. Kroger*, 527 S.W.2d 794 (Tex.App.—Houston [1st Dist.] 1975, writ dism'd) an eighteen year old woman with a tenth grade education and a two-year-old daughter was accused by her employers of stealing. She was led into a small, windowless room lit by bare light bulbs, where the store manager and another man who worked for "Kroger Security" were waiting. She was told repeatedly that they knew she had been stealing, and that if she did not admit to stealing they would handcuff her and take her to jail. She testified that she made a false confession, explaining "I just had it in my head that they were going to put me in jail no matter what I did, and I wasn't going to see my little girl for a long, long time." The court noted the woman's lack of business experience and the harsh and intimidating nature of her questioning. *Black*, 527 S.W.2d at 800. The court held that under these facts the jury could have reasonably concluded that the threats to the woman intimidated her to the point where she was not free to leave and was unreasonably detained. *Id.* at 801.

*Skillern & Sons, Inc. v. Stewart*, 379 S.W.2d 687 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e) presents a similar set of facts. A female employee was accused of stealing. She was led by the arm to a room where two men she had never met beat on a desk while telling her "we have the goods on you ... we know you've been stealing money." She was threatened with imprisonment, and told that she could not leave until she wrote a confession. She managed to leave, but was ordered back, and again told that she would either sign a confession or she would go to jail, but that she could not leave without confessing. When she tried to stand up she was physically pushed back into a chair by her accusers. These facts were held to support a recovery for false imprisonment. *Skillern*, 379 S.W.2d at 691.

In *Safeway Stores, Inc. v. Amburn*, 388 S.W.2d 443 (Tex.App.—Fort Worth 1965, no writ) the evidence was held insufficient to support a finding that the plaintiff was falsely imprisoned. In this case as well, an employee was led to a secluded room where others were waiting to accuse him of theft. The employee's path to the door, if he had desired to leave, was not blocked. The only physical contact between the employee and his accusers was a handshake. When the employee denied stealing anything he was accused of lying and threatened with jail.

The employee spent thirty to forty minutes with his accusers. The court held that, where there is nothing else particularly overbearing about this kind of meeting, threats of imprisonment are not enough to establish a claim for false imprisonment, and the court reversed the jury's verdict in the plaintiff's favor. *Id.* at 446.

In *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640 (Tex.1995), the plaintiff was a store employee accused of stealing. She was told to either wait in an office or to work on a volunteer project in a particular area. She waited in the office, but left twice and returned each time. The Texas Supreme Court rejected the plaintiff's contention that the store management had impliedly threatened her person, because no one was guarding her and she had in fact left the office twice. *Id.* at 645. Summary judgment in favor of the store on the employee's false imprisonment claim was upheld. *Id.* at 647–48.

In evaluating Fojtik's claim of false imprisonment, the issue is essentially this: to what extent must plaintiffs insist on their freedom and have it denied to them before they can recover for false imprisonment? Under some circumstances, a combination of the plaintiff's vulnerability and oppressive circumstances permit recovery, even when the plaintiffs does not actually resist their detention. Comparing the facts of this case to previous reported cases, however, indicates that this is not one of those cases. None of the factors that are considered in evaluating whether threats are sufficient to overcome the plaintiff's free will, *i.e.*, the relative size, age, experience, sex, and physical demeanor of the participants, weigh in Fojtik's favor. Fojtik was a forty-five-year-old man who had run several businesses. He was not a young, inexperienced woman, like the plaintiff in *Black.* He was not physically restrained, like the plaintiff in *Skillern.* Although he was threatened with the police, there were

no other factors adding to the intimidating effect of those threats, and, as in *Amburn*, such threats, standing alone, are not enough to establish false imprisonment. Fojtik left and voluntarily returned, as the plaintiff did in *Johnson*, where the plaintiff's actions were held to negate her false imprisonment theory.

■ Fojtik contends that his frequent comments at Charter about being "locked up" and his generally uncooperative attitude are evidence that he did not consider himself free to leave. While it may be true that Fojtik considered himself restrained, the issue is not Fojtik's subjective interpretation of his situation, but rather whether he had a *"just* fear of injury." [4] *Randall's v. Johnson*, 891 S.W.2d at 645. The facts of this case do not raise a fact issue on whether Fojtik had a "just fear" of injury. The record before us indicates that, while Fojtik certainly complained about being at Charter, he never insisted that he be permitted to leave. As discussed above, there is nothing in this case to suggest that Fojtik was a person whose weakness or susceptibility to intimidation might excuse his failure to insist on leaving when he felt he was falsely imprisoned.

■ Aside from threats of legal commitment, the "other means" of restraint identified by Fojtik are: (1) constantly telling him that he was an alcoholic and treating him as though he were, and (2) permitting him to leave on temporary passes. Appellant's argument appears to be that these methods lessened his will to insist on being released. We do not believe that such trifling matters as these constitute restraint. Treating Fojtik as an alcoholic did not restrain him; if it contributed to his ongoing presence at the Charter hospital, it did so by persuading Fojtik that he did have a problem with alcohol that should be addressed, not by any actual restraint. The fact that Charter per-

---

4. Fojtik's claim of a just fear of injury, as we understand it, is that he would be improperly subjected to arrest and proceedings to have him committed to a treatment facility by a court of law. Of course, it is possible that, had such proceedings been undertaken, the presiding court would have made the finding under section 462 of the Texas Health & Safety Code that

Fojtik is chemically dependent and evidences an imminent, substantial risk of serious harm to himself or to others, such that he would have been detained legally, not "falsely." However, because Fojtik did nothing to resist inpatient treatment at Charter, we need not consider the propriety of commitment proceedings that might have been brought against Fojtik.

mitted Fojtik to leave on passes undermines his claim for false imprisonment rather than supporting it. *See id.*

We conclude that the trial court properly granted summary judgment in Charter's favor. The judgment of the trial court is affirmed.